[No. 3360.   Decided December 23, 1899.]

WILLIAM G. ARMSTRONG, *Appellant,* v. A. T. VAN DE VANTER, *Sheriff, et al., Respondents.*

APPEAL—REVIEW OF AFFIDAVITS—MUST BE IN RECORD.

Affidavits, which have not been incorporated in the statement of facts, will not be considered on appeal.

EXTRADITION—SUFFICIENCY OF REQUISITION—ATTESTATION BY ACTING GOVERNOR.

An extradition requisition attested by the lieutenant governor of the state of Illinois, while acting governor, bears on its face that the act is done by the executive authority of the state, as required by Rev. St. U. S. §5278, when it appears from the constitution of Illinois that the lieutenant governor of that state is entitled to perform the governor's duties in case of the absence or disability of that officer.

HABEAS CORPUS — INVALIDITY OF EXTRADITION WARRANT — RIGHT OF
COURT TO EXAMINE — SUFFICIENCY OF INDICTMENT.

Upon an application for *habeas corpus* to obtain a discharge
from arrest upon a warrant issued in extradition proceedings, the
courts are authorized to inquire into the sufficiency of the indict-
ment found in the demanding state, upon which the executive
authority of that state has based his requisition.

SAME — SUFFICIENCY OF INDICTMENT — INFLUENCING JURORS.

Where an affidavit made before a justice of the peace charges
that defendant "did unlawfully attempt to influence the decision
of your affiant, who was serving at that time as a juror in a mat-
ter pending in court," etc., there is no crime charged under a
statute which provides that "Whoever corrupts or attempts, di-
rectly or indirectly, to corrupt any . . . juror . . . by
giving, offering, or promising any gift or gratuity whatever, with
intent to bias the opinion or influence the decision of such . .
. juror . . . in relation to any matter pending in the
court," is guilty of bribery, for which he may be punished by fine
or imprisonment.

SAME — INDUCING WITNESS TO LEAVE STATE.

An indictment charging defendant with conspiring with an-
other to induce a witness in a pending prosecution before a jus-
tice of the peace to leave the state does not charge a crime, when
it appears from the complaint set out in the indictment that the
justice was without jurisdiction to try the party charged before
him because he was not charged with any crime under the stat-
utes.

Appeal from Superior Court, King County.—Hon.
ORANGE JACOBS, Judge. Reversed.

*Piles, Donworth & Howe,* for appellant.

*James F. McElroy, John B. Hart* and *Addison W.
Hastie,* for respondents.

The opinion of the court was delivered by

DUNBAR, J.—In August, 1899, the appellant, being re-
strained of his liberty in King county, Washington, by the
sheriff of said county and one Frank Tyrell, claiming to
act as agent of the state of Illinois, filed his petition in the
superior court praying for the issuance of a writ of *habeas*

*corpus.* The writ was issued, but, after a hearing before the superior court, the petitioner was ordered remanded, and the proceedings dismissed. From this judgment the petitioner has appealed.

The facts preceding the arrest of the petitioner are as follows: On the 18th day of May, 1899, an alleged complaint was filed before a justice of the peace in the city of Chicago, of which the following is a copy:

"State of Illinois, County of Cook, City of Chicago, SS.

The complaint and information of J. S. Taylor, of Chicago, in said county, made before James C. Martin, Esquire, one of the justices of the peace in and for said county, on the 18th day of May, 1899, said complainant, being first duly sworn, upon his oath says that on or about the 14th day of May, A. D. 1899, in county and state aforesaid, a person about 5 feet 10 inches tall, medium complexion, whose Christian and surname is unknown to affiant, but whose person is well known, and who will be pointed out by affiant to the officer executing the warrant, did unlawfully attempt to influence the decision of your affiant, who was serving at that time as a juror in a matter pending in court, contrary to the form of the statute in such case made and provided. That this complainant has just and reasonable grounds to believe and does believe that said described person committed said offense, and therefore prays that he may be arrested and dealt with according to law.

(Signed)                              JOHN F. TAYLOR.

Subscribed and sworn to before me this 18th day of May, A. D. 1899.                    JAMES C. MARTIN.

   (Seal)                              Justice of the Peace."

The warrant was issued upon this complaint, which was never served, nor were any subsequent proceedings had before said justice of the peace on said complaint or warrant. At the June term, 1899, of the criminal court of Cook county, an indictment was found against the appellant and Daniel Coughlin, the latter of whom it is conceded was the person attempted to be described in the com-

plaint above referred to. It is unnecessary, in consideration of our view of the case, to set this indictment out in full, but in substance it charged the said Coughlin and Armstrong with unlawfully, feloniously, fraudulently, maliciously, wrongfully, and wickedly conspiring together with a fraudulent and malicious intent to wrongfully and wickedly do an illegal act injurious to the administration of public justice, viz., to hire a certain witness, to-wit, John F. Taylor, then and there a witness in a certain criminal cause wherein the people of the state of Illinois were complainants, upon the complaint and information of the said John F. Taylor, to leave the state of Illinois, so that he, the said Taylor, could not then and there be produced as a witness at the examination of said defendant. Embodied in and made a part of the information is the complaint originally made by Taylor before justice of the peace Martin. Upon this indictment a requisition was issued by the acting governor of the state of Illinois on the governor of the state of Washington, for the arrest of the said William Armstrong. The governor of the state of Washington honored the requisition, the arrest was made, and the appellant turned over to the custody of Tyrell, the agent of the state of Illinois. Upon the issuance of the writ, respondent sheriff in his return set forth copies of all the requisition papers filed with the governor of Washington, as well as the warrant of the latter governor. The petitioner, replying to the return, pleaded, among other things, the statute law of the state of Illinois, and controverted the recitals contained in the warrant of the governor of the state of Washington regarding the requisition papers on which said warrant purports to be based, claiming that his confinement, restraint, and imprisonment are in violation of § 1 of the fourteenth amendment of the constitution of the United States, in that he is deprived of his liberty without due process of law, that he is denied

the equal protection of the laws within the state of Washington, and that his arrest and restraint are in violation of § 2 of article 4 of the constitution of the United States, and of sections 5278 and 5279 of the Revised Statutes of the United States.

The affidavit of John R. Tanner, not having been incorporated in the statement of facts, under the uniform decisions of this court cannot be considered.

The first assignment of error is that the court erred in holding that the executive authority of Illinois has demanded such petitioner, as a fugitive from justice, of the executive of the state of Washington, for the reason that it does not appear by the requisition papers that W. A. Northcott, the person making the demand, is, or was at the time of making the same, the executive authority of the state of Illinois. We think it sufficiently appears from the record, in consideration of the constitution and laws of Illinois, that the extradition requisition was sufficiently attested by the executive authority of Illinois.

The second and third assignments of error embrace, in substance, the objection urged in the first.

The fourth assignment is that the court erred in refusing to go into the question of the sufficiency of the purported indictment included in the requisition papers and in refusing to decide whether said purported indictment charges a crime against said petitioner. On this proposition, after a somewhat extended, and also somewhat unsatisfactory, examination of the authorities cited, we are forced to the conclusion that the superior court should have entered upon the investigation of this question. So far as we have been able to determine, this question has not been squarely passed upon by the supreme court of the United States; certainly not in any of the cases cited. In *Ex`parte Reggel,* 114 U. S. 642 (5 Sup. Ct. 1148), the

court approached this question with the following suggestion:

" In connection with this proposition, counsel discusses, in the light of the adjudged cases, the general question as to the authority of a court of the state or territory in which the fugitive is found, to discharge him from arrest, whenever in its judgment the indictment, according to the technical rules of original pleading, is defective in its statement of the crime charged. It is sufficient for the purposes of the present case to say that, by the laws of Pennsylvania, every indictment is to be deemed and adjudged sufficient and good in law which charges the crime substantially in the language of the act of assembly prohibiting its commission, and prescribing the punishment therefor, or, if at common law, so plainly that the nature of the offense charged may be easily understood by the jury; and that the indictment which accompanied the requisition of the governor of Pennsylvania does charge the crime substantially in the language of her statute."

It is claimed in this case that there is no crime charged, substantially or otherwise, under the laws of the state of Illinois; so that no light can be obtained from the case cited.

In *Roberts v. Reilly,* 116 U. S. 80 (6 Sup. Ct. 291), after referring to section 5278 of the Revised Statutes, the court says:

" It must appear therefore to the governor of the state to whom such a demand is presented, before he can lawfully comply with it, first, that the person demanded is substantially charged with a crime against the laws of the state from whose justice he is alleged to have fled, by an indictment or affidavit, certified as authentic by the governor of the state making the demand; and second, that the person demanded is a fugitive from justice of the state the executive authority of which makes the demand. The first of these prerequisites is a question of law, and is always open upon the face of the papers to judicial inquiry, on an application for a discharge under a writ of *habeas corpus.* The second is a question of fact, which

the governor of the state upon whom the demand is made must decide, upon such evidence as he may deem satisfactory. How far his decision may be reviewed judicially in proceedings in *habeas corpus,* or whether it is not conclusive, are questions not settled by harmonious judicial decisions, nor by any authoritative judgment of this court."

It is a little difficult to understand to what the last sentence in this quotation refers, whether to the first or second question discussed. But, in any event, the announcement is that, before the requisition can issue, the person demanded must be substantially charged with a crime against the laws of the state from which he has fled. But the matter actually decided by the court is found from the further expression to this effect:

" It is conceded that the determination of the fact by the executive of the state in issuing his warrant of arrest, upon a demand made on that ground, whether the writ contains a recital of an express finding to that effect or not, must be regarded as sufficient to justify the removal until the presumption in its favor is overthrown by contrary proof. Further than that it is not necessary to go in the present case,"—citing *Ex parte Reggel, supra.*

And it is further decided that the particular indictment under question must charge a crime under and against the laws of the demanding state.

In *Pearce v. Texas,* 155 U. S. 311 (15 Sup. Ct. 116), it can be gathered from the syllabus that the question of the sufficiency of the indictment should be left entirely to the demanding state, but the opinion itself will not bear out this proposition. It goes to the extent of holding that, where the indictment is in substantial conformity with the statute of the demanding state, the defendant shall not be discharged. It is true that a majority of the judges of the circuit court went further in this direction than did the opinion written by SIMKINS, Judge, but Chief Justice

Fuller in a very brief opinion, after reciting the opinion of the lower court, concludes as follows:

" The question resolved itself, therefore, into one of the validity of the statute on the ground of its repugnancy to the constitution, and the court of appeals declined to decide in favor of its validity. . . . What the state court did was to leave the question as to whether the statute was in violation of the constitution of the United States, and the indictments insufficient accordingly, to the demanding state. Its action in that regard simply remitted to the courts of Alabama the duty of protecting the accused in the enjoyment of his constitutional rights, and if any of those rights should be denied him, which is not to be presumed, he could then seek his remedy in this court."

This case is referred to in *Whitten v. Tomlinson,* 160 U. S. 231 (16 Sup. Ct. 297), in which the question was presented whether, in a case where the court in which the indictment was found had jurisdiction of the offense, it was sufficient to make it the duty of the courts of the United States to decline interposition by writ of *habeas corpus,* and it was held that under such circumstances the courts of the United States would leave the question of the lawfulness of the detention of the prisoner to be inquired into and determined in the first instance by the courts of the state. This case, like the other United States cases on this subject, is not very clear on the proposition involved here, but there is no distinction announced between the powers of the demanding and the fugitive states in this respect.

We have not overlooked the citation of 2 Moore on Extradition, § 638, which is to the effect that,

" . . . it is believed that there is no case in which a court has on *habeas corpus* discharged a fugitive from custody on a rendition warrant on the ground that an indictment accompanying the requisition did not constitute or contain a sufficient charge of crime."

44—21 WASH

The author, however, certainly did not intend this to
be an unequivocal announcement of the law, but evidently
had reference to some distinction between the examination
of an indictment and that of an affidavit, for the cases
which he cites in support of the text, viz., *People ex. rel.
Lawrence v. Brady,* 56 N. Y. 182, and *People ex rel.
Jourdan v. Donohue,* 84 N. Y. 438, clearly announce the
other doctrine; for while it was held in *People v. Dono-
hue, supra,* that, where the papers upon which a warrant
of extradition was issued were withheld by the executive,
the warrant itself could only be looked to for the evidence
that the essential conditions of its issue have been com-
plied with, the court, in passing upon the proposition
under discussion here, said:

"And hence we have held that where the preliminary
papers upon which a warrant of extradition has been
granted are produced, and are before us, it is our right and
our duty to examine them, and judge and determine, when
our process is invoked, whether they are sufficient, under
the law, to justify the warrant of extradition,"—citing
*People ex rel. Lawrence v. Brady,* 56 N. Y. 182.

And the court reaffirms that doctrine by saying:

" Our ruling in this respect has not escaped criticism
(*Leary's Case,* 6 Abb. N. C. 44); but an opposite conclu-
sion, which would make the determination of the executive
final, even though the papers produced clearly showed that
the essential preliminaries of the law were unfulfilled,
does not yet commend itself to our judgment."

Church on Habeas Corpus (2d ed.), § 480, in discuss-
ing this question, says:

" The warrant of the governor is *prima facie* evidence,
at least, that all necessary legal prerequisites have been
complied with; and if the previous proceedings appear to
be regular, such warrant is, as a general rule, conclusive
evidence of the right to remove the prisoner to the state
from which he fled,"—

reference being made to sustain this proposition to the cases cited by him to sustain the first proposition that the warrant is *prima facie* evidence of compliance with legal prerequisites. Upon examination it is found that these . cases only sustain the first proposition. For instance, the first case cited,—*Davis' Case,* 122 Mass. 324,—seems, in the syllabus, to indicate that the regularity of the proceedings is conclusive evidence of the right to remove. But the opinion itself does not lay down such a rule, and the broad announcement in the syllabus is qualified by the announcement in the opinion of the requirement that a crime must substantially be charged. The court says:

" When an indictment appears to have been returned by a grand jury, and is certified as authentic by the governor of the other state, and substantially charges a crime, this court cannot, on *habeas corpus,* discharge the prisoner because of formal defects in the indictment; but the sufficiency of the charge as a matter of technical pleading is to be tried and determined in the state in which the indictment was found ;"

citing *In re Clark,* 9 Wend. 212. And, continuing, it is said :

"As this ground is conclusive against the petitioner, it is unnecessary to consider whether the warrant of the governor of this commonwealth, issued upon the demand and certificate of the governor of Vermont, would preclude the court from inquiring and determining whether the indictment was defective in substance."

So that it seems that the very question at issue here was not passed upon in that case. Then the court proceeded to distinguish the case of *People v. Brady, supra,* and *Ex parte Smith,* 3 McLean, 121,—both cases where no crime had been substantially charged,—from the case then under consideration ; and the other cases cited bear no more directly upon the question in point here than does the *Davis Case,* with the exception of the *Leary Case,* 6 Abb.

N. C. 43. But it is easy to determine what the view of Church was on the subject, for, after the statements above referred to, he continues:

"But after the governor has issued his warrant and the fugitive has been arrested by virtue of such warrant, it is competent for the courts of either state, on *habeas corpus,* to look into the papers and if they show no legal cause of detention, to discharge the prisoner;"

citing *In re Cook,* 49 Fed. 833, and *People ex rel. Lawrence v. Brady,* 56 N. Y. 182, and many other cases.

But the fact that the United States supreme court has in many instances passed upon the sufficiency of indictments, although the question under discussion was not raised or decided, indicates the opinion of the supreme court of the United States on that proposition; for if it were held that the sufficiency of the indictment could not be inquired into, at least so far as determining whether or not a crime had been committed under the allegations of the indictment, the very questions passed upon by the supreme court of the United States would not have been essential questions. The question has been squarely decided by several of the state and federal courts, notably in *People ex rel. Lawrence v. Brady,* 56 N. Y. 182, where the court expressed itself in the following terse and decisive language:

"He is entitled in common with all citizens, to such protection as the law gives to all; and, while the reversal of the proceedings may lead to the escape of an offender, we cannot close our eyes to the fact that criminal prosecutions for false pretenses are often perverted to the accomplishment of personal and private ends. It would be a dangerous precedent if it should be held that a man could be deprived of his liberty and removed to another state, upon an accusation so vague and unsatisfactory as is contained in the affidavits in this case. It is a reasonable rule, supported by obvious considerations of justice and policy, that when a surrender is sought upon proof, by affidavit,

of a crime, the offense should be distinctly and plainly charged. Security to personal liberty demands this, and the state will meet the full measure of its obligation under the federal constitution, if it requires this before consenting to the arrest and removal of alleged offenders."

It seems to us that the reasoning in this case is unanswerable, and, even if the authorities were conflicting, we should be inclined to follow it.

Equally plain and convincing is the following language used by the court in *Re Terrell,* 51 Fed. 213, to-wit:

" There is good cause for holding that this power should be exercised liberally, whenever the judge before whom the questions are raised, on application for a warrant of removal, or on *habeas corpus,* is satisfied, from the face of the indictment, that were such an indictment before him for trial, and demurred to, he would quash it. This is a country of vast extent, and it would be a grave abuse of the rights of the citizen if, when charged with alleged offenses committed perhaps in some place he had never visited, he were removable to a district thousands of miles from his home, to answer to an indictment fatally defective, on any mere theory of a comity which would require the sufficiency of the indictment to be tested only in the particular court in which it is pending. Nor should the mere novelty of the points raised be held to preclude the court, before which comes the question of removal, from passing upon them, when it has no doubt as to how it would pass upon them if the cause were pending before it."

To the same effect is *Ex parte Hart,* 63 Fed. 249. This is a case from this state where requisition was made on the governor of Maryland. This case also disposes of the question of the sufficiency of the affidavit by a private individual. The court, in concluding its remarks, says:

" The claim that the act of the governor of a state in issuing his warrant of removal is conclusive, and that the presumption is he had the necessary papers, duly authenticated, before him, when he acted, cannot be assented to. The act of the governor can be reviewed, and, if he has

not followed the directions and observed the conditions of the constitution and laws of the United States, pertinent to such matters, can be set aside as void."

It is evident that he has not followed the laws of the United States if the record does not show that the party demanded has committed a crime. In any event, the party demanded may be, and frequently is, a *bona fide* resident and citizen of the state upon which the requisition is made; and to hold that such party should be discriminated against in the administration of criminal law, and should be deprived of the rights and privileges under the law which are accorded to other citizens charged with crime, is not in keeping with the spirit of our law or the genius of our government, and would unnecessarily tend to a subversion of personal liberty.

The conclusion reached that the court has a right to inquire into the sufficiency of the indictment brings us to the investigation of questions affecting the substance of the extradition proceedings and the validity of the complaint upon which the indictment was founded. The section of the federal law on which the defendant in this case must be extradited, if at all, is as follows:

" Sec. 5278. Whenever the executive authority of any state or territory demands any person as a fugitive from justice, of the executive authority of any state or territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any state or territory, charging the person demanded with having committed treason, felony or other crime, certified as authentic by the governor or chief magistrate of the state or territory from whence the person so charged has fled, it shall be the duty of the executive authority of the state or territory to which such person has fled to cause him to be arrested and secured, and to cause notice of the arrest to be given to the executive authority making such demand, or to the agent of such authority appointed to receive the fugitive, and to cause the fugitive to be delivered to such agent when he shall appear."

This law was enacted by Congress to make operative § 2 of article 4 of the constitution of the United States, which is as follows:

"A person charged in any state with treason, felony or other crime, who shall flee from justice, and be found in another state, shall, on the demand of the executive authority of the state from which he fled, be delivered up to be removed to the state having jurisdiction of the crime."

The basis of the right of extradition, it will be seen, is the allegation in the indictment or affidavit that a crime has been committed by the person sought to be indicted. A pertinent question, then, is, is the defendant here legally charged with the commission of a crime under the laws of the state of Illinois by the indictment which is made a part of the record? We think this question must be answered in the negative. The indictment is based upon a complaint made before justice of the peace Martin, by Taylor, and has been set forth above.

It is earnestly contended by the appellant that the description is not sufficient; that "a person about five feet ten inches tall, medium complexion, whose Christian and surname is unknown to affiant, but whose person is well known and who will be pointed out by the affiant to the officer executing the warrant," is not sufficiently definite, and that no particular person is therein described. Had the complaint, in other particulars, been sufficient, we are not certain that we should discharge the appellant on this defect alone, but in other respects no crime seems to have been charged. The person attempted to be described is charged with unlawfully attempting to influence the decision of affiant, who was serving at that time as a juror in a matter pending in court, contrary to the form of the statute in such cases made and provided. It appears from the record that no arrest had been made at the time the indictment which is based upon this complaint was

founded, and it may have been, especially considering the
meagerness of the description, that no arrest ever would
be made, and that there could be no attempt to conspire
for the purpose of hiring a witness to leave the state to
evade testifying in the alleged proceeding. In addition to
this, the defendant is not informed by the complaint what
court it was in which the matter was pending,—whether
it was a court in Cook county or in the state of Illinois,—
and, indeed, for all the information that the complaint
gives, it might have been a court anywhere in any of the
states of the Union; and while, under the uniform prac-
tice, many of the refinements of the criminal law which
tend to defeat the ends of justice have been swept away,
yet the other extreme must not be reached, of holding a
defendant answerable to the law when he is not charged
with any crime. In those jurisdictions where the re-
formed practice prevails, a statement of facts has been
substituted for the technical requirements of the common
law; but here there is no statement of facts to which the
accused can turn to aid him in preparing his defense in the
matters to which we have above referred.

The section of the Illinois statute upon which this com-
plaint was based is as follows:

" Whoever corrupts or attempts, directly or indirectly,
to corrupt any master in chancery, auditor, juror, arbi-
trator, umpire, or referee by giving, offering or promising
any gift or gratuity whatever, with intent to bias the
opinion or influence the decision of such master in chan-
cery, auditor, juror, arbitrator, umpire or referee in rela-
tion to any matter pending in the court . . . shall
be imprisoned in the penitentiary not exceeding five years
or fined not exceeding one thousand dollars, and confined
in the county jail not exceeding one year."

It is true that a complaint made to a justice of the peace
will not be scrutinized as critically as will an indictment
by a grand jury, nor will it be required to follow as closely

rules of technical pleading. But even a complaint made to a justice of the peace, to give the justice jurisdiction, must state the facts which, under the law, constitute a crime. Under the statute above cited it is not a crime to unlawfully attempt to influence the decision of a juror in a matter pending in court, but the crime is to attempt to corrupt, not by unlawfully influencing, but by unlawfully influencing how? The statute is not silent as to the mode. Many willful attempts to corrupt and influence the decision of a juror might be conceived of that would not fall under the ban of this statute, and there might be many unlawful attempts to influence a juror without any attempt whatever to corrupt. For instance, talking before a juror about the merits of a case for the purpose of influencing him. Such an act would be unlawful, and doubtless would subject the offender to punishment for contempt; or an attorney might deliberately misstate the evidence in the case; and instances of this character of offenses might be multiplied. But certainly such would not be crimes falling within the purview of this statute; and yet, as far as this complaint informs us, the defendant might have been charged with one of the offenses instanced. But the statute leaves nothing to conjecture, or to the discretion of the court, for it plainly provides that the attempt to corrupt and unlawfully influence must be by giving, offering, or promising some gift or gratuity. Through these agencies alone must the corrupting influence be obtained or attempted. It is also contended by the respondent that under the law of Illinois it is sufficient to charge the crime in the language of the statute. However that may be, a glance at the law and the complaint shows that the offense was not charged in the language of the statute.

It is insisted by the respondent that the pleading of the complaint in this instance was a matter of inducement, and that in such cases that particularity is not required

that is required in charging the crime to which the respondent is to answer; and many citations are made in support of that proposition, notably 2 Bishop's New Criminal Procedure, 904, where the rule is announced as follows:

"The following distinctions, if borne in mind, will be helpful to a proper understanding of this entire subject. The averments are necessarily and always of two classes,— those which disclose a foundation for the commission of the offense, and those which charge the offense itself. By the universal rules of criminal pleading, the former, commonly called inducement, may be general in terms, and be either introduced or not by 'whereas.' The latter must be full, direct and specific."

And the cases cited are to the same effect. But the trouble with this particular case is that, while the indictment might have been held sufficient if a general reference had been made to the matter which is pleaded by way of inducement, the pleader did not see fit to do this, but pleaded in full the complaint upon which the indictment is based; and, the complaint showing affirmatively that there was no jurisdiction in the justice of the peace to issue the warrant for the arrest of the defendant, there could have been no trial pending to base the indictment upon, which is presented against the defendant in this case. The whole record, then, affirmatively showing lack of jurisdiction in the justice of the peace to try the original case, the indictment must be held to be illegal and void, as the defendant is not charged with any crime. It is not crime to attempt to induce a person to leave the state. It is a crime only when such attempt is made for the purpose of injuriously affecting the administration of public justice in a cause pending.

The judgment will be reversed, with instructions to the lower court to discharge the defendant.

GORDON, C. J., and REAVIS and FULLERTON, JJ., concur.