# CHARLESTON.

STATE *ex rel.* BLAKE *v.* DOEPPE.

Submitted September 16, 1924. Decided September 23, 1924.

1. EXTRADITION—HABEAS CORPUS—*Courts May Determine, on Writ of Habeas Corpus, Whether Person Arrested for Extradition is Fugitive From Justice of Demanding State; Person Arrested for Extradition, not Fugitive From Justice of Demanding State, Should be Released From Custody.*

The courts of this state, on writ of habeas corpus, may ascertain, by proper evidence, if a person who has been arrested for extradition is a fugitive from the justice of the demanding state. If he be not "a fugitive from justice," within the mean-

ing of section 2 of article 4 of the Constitution of the United States, he will be discharged from custody. (p. 206).

(Extradition, 25 C. J. § 11).

2. SAME—*Rule Stated as to Necessity of Presence of Accused in Demanding State When Crime Committed, to be "Fugitive From Justice."*.

To be a "fugitive from justice," it is necessary that the person charged as such must have been actually present in the demanding state at the time of the commission of the crime, or, having been there, has then committed some overt act in furtherance of the crime subsequently consummated, and has departed to another jurisdiction. And, if the evidence be clear and convincing that the accused was not personally in the demanding state at the time of the commission of the offense charged, and has committed no prior overt act therein indicative of an intent to commit the crime, or which can be construed as a step in the furtherance of the crime afterwards consummated, he should be discharged. (p. 206.)

(Extradition, 25 C. J. § 12).

NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.

Error to Circuit Court, Cabell County.

Habeas corpus by the State, on relation of D. L. Blake, against W. L. Doeppe. Judgment remanding relator to custody, and he brings error.

*Reversed and prisoner discharged.*

*George S. Wallace,* for plaintiff in error.

LIVELY, JUDGE:

The only question for decision is whether the plaintiff in error, D. L. Blake, is a fugitive from the justice of the State of Virginia.

On December 18, 1923, Mrs. Fannie Blake caused a warrant for the arrest of D. L. Blake to be issued by a justice of the peace of the City of Richmond, Virginia, charging him, within the six months last past, of unlawfully deserting and failing to provide for her support, she being his wife, and for the support of his two children under the age of 16 years, all being in destitute and necessitous circumstances. The Governor of Virginia by requisition demanded of the Gov-

ernor of this State the body of Daniel L. Blake, representing that he was a fugitive from justice from the State of Virginia and had taken refuge within this State. The requisition was honored and Blake was arrested and delivered to defendant, W. L. Doeppe, the agent appointed by the Governor of Virginia. Blake promptly sued out a writ of habeas corpus from the Judge of the Circuit Court of Cabell County, where he was arrested, and upon a hearing the Judge of that court remanded him to the custody of Doeppe. From that judgment the plaintiff in error prosecutes this writ of error.

There is very little controversy as to the facts. Blake operated a steam shovel, and in following his occupation went to various states and different places in each state, wherever his occupation demanded. He met Fannie Heir (Hare), known in this proceeding as Fannie Blake, at Mount Hope, in Fayette County, West Virginia, about the year 1914. From there he went to North Carolina, where she joined him and where they were supposed to have been married before one Jones, supposed to have been a minister. She asserts that they were married, although she produced no evidence of that fact; while he asserts that no marriage took place. However, they lived together as man and wife, and shortly afterwards a child was born to them, which child is now about eight years of age. Subsequently they moved to Selma, another point in North Carolina, and later he went to Petersburg, Virginia, where he was joined by her. After residing in Petersburg for about six months they went to Richmond, Virginia, where they took a house or apartment, and where she has since resided. A second child was born to them about June, 1923. During these changes of residence and after they had moved to Richmond, he would be away for long periods pursuing his occupation. In January, 1923, Blake went to Kentucky, being employed by a construction firm; later he came to Cabell County, West Virginia, where he worked on a state highway. In June of that year she telegraphed him that she was ill in Richmond, and asked him to come to see her. He did so; found her not ill, and returned to his work. On the 29th day of that month he received another telegram from her of like import. Again he visited her and found her suffering from some illness; took her to a

hospital, paid her hospital and other bills, gave her $155.00 in money, and returned to his work on the 4th day of July of that year, and has been in this State continuously since that date. His wages were paid semi-monthly, and upon the receipt of each pay he would send her a portion thereof, which he states to have been one-half of his wages. From the time of his return until the following November he sent her a sum estimated to be at least $350.00. She admits these facts and says frankly that he "did what was right" until October, 1923, and admits that he sent her $25.00 in November and a short time later the sum of $4.00. It appears that after his return on July 5th to Cabell County, he met a young lady, residing in Wayne County of this State, courted and married her. The proceedings for extradition herein detailed were then begun.

Plaintiff in error asserts that the lower court erred in finding that he was a fugitive from the justice of the State of Virginia, because it is clearly shown that at the time of the commission of the alleged offense he was not in that State; relying upon the well established interpretation of Section 2, of Article IV of the Constitution of the United States (the extradition clause), by the federal and state courts, that in order to be a fugitive from justice one must have committed a crime in the demanding state, and when wanted to answer for such crime must have left the jurisdiction of that state and be found in another jurisdiction; and that he must have been personally present in the state in which the crime was committed at the time of its commission. It is essential that he shall have incurred guilt while bodily present in the demanding state before he left its jurisdiction. *Hyatt* v. *New York*, 188 U. S. 691, 47 L. Ed 657; *Appleyard* v. *Commonwealth*, 203 U. S. 222, 51 L. Ed. 161; 25 Corpus Juris, 257, Sec. 12. The doctrine of constructive presence at the time of the commission of the crime in the demanding state was set at rest by the Supreme Court of the United States in *Hyatt* v. *Corkran*, 188 U. S. 691. The personal presence of the accused in the demanding state at the time of the commission of the crime is a necessary jurisdictional fact and may be inquired into and ascertained by the governor of the asylum state or the courts of that state. *Jones* v. *Leonard*, 50 Iowa,

106, 32 Am. Rep. 116; *Hartman* v. *Aveline,* 63 Ind. 344; *Tennessee* v. *Jackson,* 36 Fed. 258. Was Blake personally present in the State of Virginia at the time of the commission of the alleged offense? There can be no question that Blake was in the City of Richmond within the month of June, 1923, leaving that city finally on the 4th of July of the same year. It becomes necessary to consider whether at that time he committed any overt act which could be considered as a step toward the commission of the crime afterwards consummated. Did he at that time commit some overt act which was intended to be a material step in the accomplishment of the desertion and non-support subsequently consummated in this State? The Supreme Court of the United States in the case of *Strassheim* v. *Daily,* 221 U. S. 280, 55 L. Ed. 735, said, "We think it plain that the criminal need not do within the state every act necessary to complete the crime. If he does there an overt act which is, and is intended to be, a material step toward accomplishing the crime, and then absents himself from the state and does the rest elsewhere, he becomes a fugitive from justice when the crime is complete, if not before * * * for all that is necessary to convert a criminal under the laws of a state into a fugitive from justice is that he should have left the state after having incurred guilt there * * * and his overt act becomes retrospectively guilty when the contemplated result ensues." The laws of the states making it a crime for a husband to desert his wife and children and leave them in necessitous circumstances, could be easily evaded if the husband abandoned them with that intention and went to another state and for a short time contributed to their support and then cut-off further contribution, thus consummating the intent formed when he left them. Defendant in error has made no appearance in this court and no brief has been filed; and as above stated, plaintiff in error has contented himself with relying upon the well established principle that a person to be a fugitive from justice must have been personally present in the demanding state when the crime was actually committed. Our research has disclosed few cases relative to the right to extradite one who deserts wife or family and leaves the state of their domicile which state is seeking to extradite him. In *Ex Parte Kuhns,* 137

Pac. 83, 50 L. R. A. (N. S.), 507, it appeared that Kuhn and his wife had entered into a separation agreement in Pennsylvania, whereby he was to pay her monthly sums for her support and that of an infant son; he complied with this agreement, and without being in arrears, left Pennsylvania and went to Nebraska, where he made some additional payments for the support of the son but failed to contribute to the support of his wife. After he had resided in Nebraska for a short time, he was arrested on extradition papers. It was decided on habeas corpus that he was not a fugitive from justice and was discharged. In *Ex Parte Roberson,* 149 Pac. 182, L. R. A. 1915. E. 691, it was held that one is not a fugitive from justice who, after leaving his wife with her consent and going to another state with no intention of abandoning her, forms, when in the latter state, such intention, although he is subsequently indicted for such abandonment in his former domicile. It appears that Roberson and his wife were married on the last day of June, 1912, in Martin County, North Carolina, from which place they went to Raleigh and lived together until December, 1913, when she was delivered of a child. After employing a physician to attend her in her illness Roberson went to Hamlet, North Carolina, and a very short time afterwards she returned to the home of her mother and grandfather, with whom she had lived prior to her marriage. Roberson went from Hamlet to Poughkeepsie, New York, where he attended school; later going to Nevada, where he entered the university of that state, and while a student there, he was indicted in North Carolina for non-support of his wife and child and sought to be extradited. One of the grounds on which Roberson was released was, that it was apparent from the evidence that he had no intention of abandoning his wife at the time he left North Carolina to enter school at Poughkeepsie; and that his intention to abandon her was formed after leaving North Carolina. Both were about eighteen years of age at the time they were married. In *Ex Parte Forbes,* one of the defenses was that the prisoner was not a fugitive from the justice of Michigan, because the warrant charged him with having deserted his wife and family on the 22nd day of December, 1918, and the evidence showed that he had left the State of Michigan on the 21st day of

December, 1918, and therefore he was not in the state at the time of the commission of the offense. He relied upon the principle herein mentioned, that extradition will not be effective where the person sought to be extradited was not personally present within the state at the time the crime was alleged to have been committed. It appears that no evidence was introduced relative to the intention with which defendant left the State of Michigan on the day before the warrant was issued. Under the facts the court could well determine that the crime of abandonment or at least the first step thereof was committed before he left Michigan. In *State ex rel. Rinne* v. *Gerber,* 111 Minn. 132, the majority opinion was to the effect that the court on trial by habeas corpus could not consider evidence that the accused had provided means for the support of the wife and family before he left the state seeking his return under requisition for non-support and desertion. It held, in substance, that the fact that he had left the state and gone to another state and subsequently had failed to provide for them was sufficient to show that he left them with the intention of ultimate abandonment; that evidence of full support, both before the time he left and afterwards for a period, would be a matter of defense upon the trial. Justice Lewis dissented, stating that such evidence should be admitted and considered, not to establish the guilt or innocence of the accused, but on the question as to whether he was actually a fugitive from justice, the jurisdictional question which courts may try on habeas corpus in extradition cases. It will be noted that the majority opinion on this point is contrary to the decisions hereinbefore cited.

We are of the opinion that such evidence may be considered to determine whether or not the accused is a fugitive from justice. *Ex Parte Jowell,* 223 S. W. 456, 11 A. L. R. 1407 and cases cited in note on page 1410. There must be some overt act by the accused in the state where the crime is alleged to have been committed, which is a part of the crime if ultimately consummated elsewhere; unless such overt act has been committed, the accused is not a fugitive from justice. It is clear from the evidence, which is not in the least con-contradictory, (except upon the question of the marriage of the parties), that Blake, when he went to Kentucky from Vir-

ginia and afterwards to this State, had committed no overt act in the State of Virginia which in the least indicated that he intended to abandon or refuse to support Fannie Blake or Fannie Heir (Hare) and her two children. He had for many years left them in like manner. On the contrary he amply provided for her and them in the months of June, July, August, September and October, 1923. The last time he was in the State of Virginia was between June 29th and July 5th, 1923, at which time he made ample provision for her and her childrens' then necessities. It was after he returned, and some time in October of that year that he met his present wife in Wayne County and married her. Then the alleged non-support proceedings were begun. The remedy of Fannie Blake or Fannie Heir (Hare), if any, is not by extradition. We hold that D. L. Blake is not a fugitive from justice, under the uncontradicted testimony. No doubt the authorities of the great Commonwealth of Virginia, if they had had knowledge of the facts which were developed in this hearing, would not have insisted upon, and will not now expect, the extradition of a person who has not committed an offense while within her borders. We reverse the judgment of the lower court and discharge plaintiff in error.

*Reversed; prisoner discharged.*