CHARLES CASSIS *v.* HAZEN H. FAIR, *Sheriff, etc.*

(No. 9444)

Submitted February 1, 1944. Decided February 29, 1944.

*Forrest F. Smith,* for plaintiff in error.

*Clinton Rogerson* and *Martin Brown,* for defendant in error.

ROSE, PRESIDENT:

The Circuit Court of Marshall County, a special judge sitting, upon a writ of habeas corpus issued upon the petition of Charles Cassis discharged him from the custody of Hazen H. Fair, the Sheriff of that county, by whom he was held in custody pursuant to arrest made under an extradition warrant by the Governor of this State at the instance of the Governor of Ohio upon which the said Sheriff obtained this writ of error to the judgment of that court.

It appears that by Sections 710-176 of the General Code of Ohio it is provided that "Any person, who, with intent to defraud, shall make or draw or utter or deliver any check, draft or order for the payment of money upon any bank or other depository, who, at the time thereof, has insufficient funds or credit with such bank or depository, shall be guilty of a felony and upon conviction thereof shall be fined not less than fifty dollars and not more than two hundred dollars, or imprisoned in the Ohio state penitentiary for not less than one year nor more than three years or both."

Under date of April 23, 1942, the Grand Jury of the Court of Common Pleas of Franklin County, Ohio, returned an indictment containing six counts against said Cassis charging him with the violation of this statute. The first count in the indictment charges that

"Charles Cassis, late of said County, on or about the 28th day of May, in the year of our Lord, one thousand nine hundred and Forty within the County of Franklin aforesaid, unlawfully, purposely and with intent to defraud, did make, draw, utter, and deliver to one Jack Kaufman, Inc., a certain check for the payment of money, drawn on a certain bank, to-wit, New Martinsville Bank, New Martinsville, West Va., said check being of the purport, value, and in terms as follows, dated May 28, 1940, drawn on the New Martinsville Bank, New Martinsville, West Va., payable to the order of Jack Kaufman, Inc. for the sum of one hundred and sixty-eight dollars and fifteen cents, signed, Wetzel-Tyler Produce Co. Inc. by Charles Cassis, Pres. said Charles Cassis, at the time of so making, drawing, uttering, and delivering said check, knowing that he then had no funds and credit with such bank."

The other five counts are in the same substance and form except that there is described in each a check of a different amount, date and payee.

The Prosecuting Attorney of Franklin County requested the Governor of Ohio to ask of the Governor of West Virginia the extradition of Cassis to the former state. This request from the Governor of Ohio was accompanied by four affidavits purporting to be executed by persons having knowledge of the facts in the case and giving the particular circumstances surrounding the alleged offense and stating in each case that the extradition was made in good faith for the punishment of crime and not for the purpose of the collection of a debt or other pecuniary mulct, or of removing the said fugitive from justice to the State of Ohio to serve him with civil process, or for any other purpose than for the punishment for the violation of the criminal statutes of the State of Ohio in such cases made and provided. The Governor of this State issued a warrant for the apprehension of Cassis which contained these recitals:

"Whereas, the Governor of the State of Ohio has by a Requisition demanded of our Governor the body of Charles Cassis and has represented that he has committed an act in West Virginia or a third State intentionally resulting in the hereinafter described offense in said State of Ohio and that he may now be found within the State of West Virginia and,

"Whereas, It appears from papers accompanying said Requisition, therein certified to be duly authenticated according to the laws of said State, that the said Charles Cassis stands charged with the crime of violating Sec. 710-176, General Code of Ohio, executing and delivering checks upon bank, not having sufficient funds therein, with intent to defraud, committed in the County of Franklin in said State of Ohio, by reason of an act committed in West Virginia, or a third state, intentionally resulting in the aforesaid crime in Ohio * * * *"

This warrant was delivered to the Sheriff of Marshall County, who made arrest of Cassis and, as required by statute, took him immediately before the Judge of the Circuit Court of that County, who, as provided by law, advised him of the charge made against him and of his right to be assisted by counsel. At this point Cassis filed a petition seeking a writ of *habeas corpus* against the Sheriff, by whom he was held, in which he alleged thirteen grounds to show that his detention was illegal. In response to this writ the Sheriff made return exhibiting the Governor's warrant under which Cassis was apprehended and held, together with a copy of the indictment from Ohio and other papers accompanying the requisition for extradition. Cassis then gave testimony on his own behalf at the bar of the court after which the court made an order reciting that he was found to be illegally held and directing his discharge.

The Governor's warrant shows that the extradition of Cassis was sought under sub-section (g) of Section 7 of Chapter 42 of the Acts of the Legislature of West Virginia of 1937, which reads as follows:

"(g) The governor·of this state may also surrender, on demand of the executive authority of any other state, any person in this state charged in such other state in the manner provided in subdivision (c) of this section, with committing an act in this state, or in a third state, intentionally resulting in a crime in the state whose executive authority is making the demand, and the provisions of this article not otherwise inconsistent, shall apply to such cases, even though the accused was not in that state at the time of the commission of the crime, and has not fled therefrom."

The accused argues here that this section contravenes the Constitution of the United States and that of this State. No provision of the West Virginia Constitution is pointed out which would forbid the enactment and enforcement of this section of the statute and we find none. The only provision of the Federal Constitution invoked is that part of Section 2 of Article 4, which reads as follows:

"A Person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime."

Chapter 42 of the Acts of 1937 is not a novel statute devised by our Legislature, but has been adopted by many states of the Union. Indeed, Section 13 of the Act itself contains these sentences: "The provisions of sections seven to thirteen of this article shall be so interpreted and construed as to effectuate its general purposes to make uniform the law of those states which enact such provisions * * *." and "Sections seven to thirteen of this article may be cited as the 'Uniform Criminal Extradition Act'." Yet not a single case is cited by which any part of this Act has been held to be in contravention of any state constitution or that of the United States. No reason is pointed out, or perceived, why the constitutionality of the

Act should be questioned. In the State of Ohio it has been held constitutional. *Culbertson* v. *Sweeney,* 70 Ohio App. 344, 44 N. E. 2d 807. The supreme court of that state dismissed an appeal of that case "for the reason that no debatable constitutional question is involved." *Culbertson* v. *Sweeney,* 140 Ohio St. 426, 45 N. E. 2d 118. The Federal Constitution merely provides that one charged with crime who shall flee from justice shall be rendered up by the state in which he is found, to the authorities of the state from which he fled. It in no sense purports to limit extradition to these cases. It does not forbid a state to yield up to another state one charged with crime but who has not in fact fled from that other state. No reason in law, expediency or comity has been suggested why extradition should be limited to those who were physically in the state at the time the crime was committed. Many crimes may be committed in a state while the culprit remains without its borders. This is particularly true where such offender acts through an agent or a conspirator. Certainly one may commit the offense of uttering or delivering a bad check in a state without being physically therein. We hold, therefore, that the charge of unconstitutionality made against the section of the Act quoted is not well founded.

A second basis relied upon as justifying the discharge of the accused is that it appears distinctly from the evidence which Cassis gave at the bar of the court and from the affidavits accompanying the requisition for extradition that he has never fled from Ohio, that is, that he is not a fugitive from justice. It is a sufficient disposition of this assignment to note that the accused is not being proceeded against as a fugitive, but as one, who, outside the State of Ohio, committed an offense within that state, and is, therefore, proceeded against expressly as one who is not a fugitive.

A number of the grounds assigned for discharge in the petition for writ of *habeas corpus* are tantamount to an assertion that the accused is not guilty of the crime with

which he is charged. The whole of the evidence introduced by him at the bar of the court bore on this question. The accused says that he did not deliver or alter the checks; that he was in Florida during all the time these various checks were allegedly delivered; that he had left checks signed in blank with instructions to his subordinates that they should only be delivered when sufficient funds were in the bank to make them good; and other like matter. All these matters are wholly beside the point. Extradition is not based on guilt, but solely upon the fact that the accused is "charged * * * with crime." The Federal Constitution expressly uses this language and our State statute adheres to the same words. Therefore, any attack on the extradition proceedings which is based upon the claimed innocence of the accused is wholly immaterial. Neither the governor, nor the court reviewing his action, can take into consideration this question. *Drew* v. *Thaw*, 235 U. S. 432, 35 S. Ct. 137; *People ex rel. Carr* v. *Murray*, 357 Ill. 326, 192 N. E. 198; *People ex rel. Gottschalk* v. *Brown*, 237 N. Y. 483, 143 N. E. 653; *State ex rel. Davey* v. *Owen*, 133 Ohio St. 96, 12 N. E. 2d 144; *Commonwealth* v. *Heinz*, 141 Pa. Super. 158, 14 A. 2d 875; *In re Harris*, 309 Mass. 180, 34 N. E. 2d 504; *Ex parte Harper*, 17 Cal. App. 2d 446, 62 P. 2d 390; *State* v. *Parrish*, 242 Ala. 7, 5 So. 2d 828. This universal rule is embodied expressly in section 9 (k) of the Act in question, which reads as follows:

> "(k) The guilt or innocence of the accused as to the crime of which he is charged may not be inquired into by the governor or in any proceeding after the demand for extradition accompanied by a charge of crime in legal form as provided in this article shall have been presented to the governor, except as it may be involved in identifying the person held as the person charged with the crime."

Whatever liberality of inquiry may have been permitted on the question of guilt prior to the Act of 1937 is now legally impossible by virtue of this provision of the Act,

and cases originating prior to that date are not precedents to be considered now.

The case of *Boyles* v. *Hudak,* 120 W. Va. 431, 199 S. E. 5, is cited against this conclusion, but that case only held that section 9 (k) "does not inhibit a determination of whether the accused is a fugitive from justice from the demanding state", a question which in no way arises in the case at bar. The accused here is not a fugitive, nor is he being proceeded against as such.

Another question as to the validity of these proceedings requires consideration, namely, whether the indictment which lies at the foundation of extradition charges substantially against the accused any crime. It is not only the right, but the duty of the proper authorities of the asylum state, executive and judicial, to determine whether the accused is, in fact, charged with a crime in the demanding state. *Roberts* v. *Reilly,* 116 U. S. 80, 6 S. Ct. 291, 29 L. Ed. 544; *Appleyard* v. *State of Massachusetts,* 203 U. S. 222, 27 S. Ct. 122, 51 L. Ed. 161. The indictment may be tested by the accused by *habeas corpus,* without authorization by statute. *Munsey* v. *Clough,* 196 U. S. 364, 25 S. Ct. 282, 49 L. Ed. 515; *State ex rel. Blake* v. *Doeppe,* 97 W. Va. 203, 124 S. E. 667. Section 9 (a) of the Act in question expressly authorizes such a proceeding. *In re Heck,* 122 W. Va. 175, 7 S. E. 2d 866.

It will be observed that the indictment charges that Cassis did, make, draw, utter and deliver a certain check "signed, Wetzel-Tyler Produce Co. Inc. by Charles Cassis, Pres. said Charles Cassis, at the time of so making, drawing, uttering, and delivering said check, knowing that *he* then had no funds or credit with said bank." But the statute cannot but mean that an offense shall be committed only where the drawer of the check, or person to whom it is to be charged, has insufficient funds or credit with the bank on which the check is drawn, that is, there shall be no funds or credit in the bank against which the check may be charged. If in fact the Wetzel-Tyler Produce Co. Inc., had sufficient funds or credit in the bank on which its

check was drawn, it could be no possible crime that the official who acted for the corporation in drawing the check had no personal funds or credit therein. Notwithstanding all that is alleged in the indictment the checks alleged to have been drawn and delivered may have been perfectly good. The only charge is that the president had no funds or credit. His having or not having funds or credit in the bank could have nothing whatever to do with the alleged fraudulence of checks of the corporation. The indictment fails to state an offense created by the statute; it describes no crime thereunder. On its face it negatives any charge of crime against the accused in respect to the matters on which the whole extradition proceeding is founded.

To be subject to extradition the accused must be charged with a crime in the demanding state, and this means that the charge standing against him must legally constitute a crime. A defective charge is no charge; a bad indictment is no indictment. Mere defects in the indictment as an instrument of criminal pleading will be disregarded. Such matters are left to the courts of the state in which the prosecution is proceeding. For the courts of one state to undertake to determine such niceties of local law would be, not only impossible, but highly vexatious to both states. Hence, all reasonable presumptions are indulged to sustain the sufficiency of the instrument by which the crime is charged. *Ex parte Reggel,* 114 U. S. 642, 5 S. Ct. 1148, 29 L. Ed. 250. But, if the indictment or other charge of crime on which the requisition is founded wholly fails in any of the fundamental elements of the crime indicated, extradition should be refused. *Pierce* v. *Creecy,* 210 U. S. 387, 28 S. Ct. 714, 52 L. Ed. 1113; *Ex parte Hubbard,* 201 N. C. 472, 160 S. E. 569; *People ex rel. De Martini* v. *McLaughlin,* 243 N. Y. 417, 153 N. E. 853; *Ex parte Offutt,* 29 Okla. Cr. Rep. 401, 234 P. 222; *Armstrong* v. *Van DeVanter,* 21 Wash. 682, 59 P. 510. The fundamental element of the crime sought to be charged against the accused is the badness of the check—

the lack of funds or credit. of the drawer, not the mere utterance or delivery of the check.

It is suggested that the use of the word "he" instead of "it" in the indictment, is merely a clerical error, for which the indictment is amendable, and our attention is called to a provision of the General Code of Ohio, Section 13437-29, as follows: "The court may at any time before, during or after the trial amend the indictment, information or bill of particulars, in respect to any defect, imperfection or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged." This extremely liberal provision for amendment of the indictment may save it, if and when such amendment shall have been actually made; but the mere legal possibility of such amendment does not operate to render immaterial or cure the defect existing now. The indictment as it now stands is bad, and, for aught we can say, there may never be an amendment so as to charge that the corporation drawer did not have funds in the bank at the time the check was drawn, uttered or delivered. We fail to perceive how a defective indictment can be rendered sufficient to sustain extradition, by the mere possibility of amendment, any more than by the possibility of a new indictment. We must consider the charge as it now stands and that charge is insufficient. On this ground, and this alone, we consider the judgment of the lower court to have been justified. Accordingly the order appealed from will be affirmed.

*Affirmed.*