649 P.2d 1234

**Clark G. KERR, Plaintiff-Appellant,**

**v.**

**Rocky WATSON, Sheriff, Kootenai County, Defendant-Respondent.**

**No. 13814.**

Court of Appeals of Idaho.

Aug. 18, 1982.

David A. Frazier, Coeur d'Alene, for plaintiff-appellant.

David H. Leroy, Atty. Gen., Lynn E. Thomas, Sol. Gen., Michael B. Kennedy, Deputy Atty. Gen., Boise, for defendant-respondent.

SWANSTROM, Judge.

The State of Oregon sought to extradite Clark Kerr from Idaho on a charge of interfering with his former wife's custodial rights to their minor child. Kerr obtained a writ of habeas corpus in Kootenai County, Idaho, to challenge the validity of the extradition proceedings. After a hearing the district court refused to halt Kerr's extradition to Oregon, and quashed the writ. Kerr appealed. The issues in the case are whether the district court erred in finding that appellant is a fugitive from justice; whether criminal proceedings had been commenced in Oregon when extradition was demanded; and whether the Oregon requisition documents alleged sufficient facts to charge a crime.

A sworn statement of the district attorney of Wasco County, Oregon, makes the following allegations: Appellant and Christine A. Kerr are the divorced parents of a daughter, Aundrea. Christine was given legal custody of Aundrea, but on December 23, 1978, she allowed appellant to pick up the four-year-old child at The Dalles, Oregon, for visitation purposes during the holidays. He was to return Aundrea to her mother on January 18, 1979. On January 10, he removed Aundrea from Oregon, taking her to the state of Washington without notifying the mother or obtaining her consent. On January 18, appellant quit his job

in Oregon, vacated his rented apartment, and rejoined his daughter in Washington. He did not return Aundrea to her mother on January 18 as agreed. It is alleged that the mother heard nothing from her daughter or ex-husband until August, 1979.

On August 14, 1979, appellant was arrested in Coeur d'Alene, Idaho.[1] On August 16, a grand jury in Wasco County, Oregon, indicted appellant on the charge of custodial interference in the first degree, a felony under Oregon law. The governor of Oregon requested extradition of appellant to the state of Oregon. The governor of Idaho complied with the request and issued an extradition warrant. These proceedings ensued. We affirm the order of the district court quashing the writ of habeas corpus and allowing appellant to be extradited.

*Fugitive Status.*

A person commits custodial interference in the second degree in Oregon if "knowing or having reason to know that he has no legal right to do so, he takes, entices or keeps a person from his legal custodian with intent to hold him permanently or for a protracted period." O.R.S. 163.245. This crime becomes first degree custodial interference (a felony) if the perpetrator "causes the person taken, enticed or kept from his lawful custodian to be removed from the state . . . ." O.R.S. 163.257.

The indictment, charging appellant with custodial interference in the first degree, alleges that appellant:

[O]n or about the 18th day of January, 1979, in Wasco County, Oregon, knowing that he had no legal right to do so, did unlawfully and knowingly take and keep AUNDREA A. KERR from her legal custodian, to-wit: CHRISTINE A. KERR, with the intent to hold her for a protracted period of time, and caused the said AUNDREA A. KERR to be removed from the State of Oregon. . . .

Appellant contends that because he had the legal right to custody of Aundrea until January 18, 1979—and on that day both he and Aundrea were in the state of Washington—he was not then a "fugitive" subject to extradition. This contention is based on his claim that he was not in the state of Oregon when the crime was alleged to have been committed.

■ The absence of fugitive status is a valid defense to extradition. Our Supreme Court has held that where a habeas corpus petitioner shows by clear and convincing evidence that he was not present in the demanding state at the time of the commission of the crime for which he stands accused, his petition should be granted. *Walton v. State*, 98 Idaho 442, 445, 566 P.2d 765, 768 (1977). However, that holding should not be so broadly construed as to diminish Idaho's duties under Article 4, Section 2 of the United States Constitution. That section provides that:

[a] person charged in any state with treason, felony, or other crime, who shall flee from justice, and be found in another state, shall on demand of the executive authority of the state from which he fled, be delivered up, to be removed to the state having jurisdiction of the crime.

The United States Supreme Court in *Strassheim v. Daily*, 221 U.S. 280, 285, 31 S.Ct. 558, 560, 55 L.Ed. 735 (1911), said:

[W]e think it plain that the criminal need not do within the State every act necessary to complete the crime. If he does there an overt act which is and is intended to be a material step toward accomplishing the crime, and then absents himself from the State and does the rest elsewhere, he becomes a fugitive from justice when the crime is complete. . . .

1. In an affidavit and in a responsive pleading filed in the district court, appellant alleges he was arrested on August 14 by Coeur d'Alene police officers "upon a charge of Custodial Interference in the First Degree under O.R.S. Section 163.257. . . ." The next day he was released on bail. Appellant did not contend in the trial court that his initial arrest was illegal.

In his reply brief on appeal, he now asserts the irregularities of a premature arrest in Idaho—before the indictment was issued—as grounds for this court to overturn the district court's order which quashed the writ. No authority for this argument has been cited. We decline to consider this issue, raised for the first time on appeal.

*Accord U. S. ex rel. Miller v. Walsh,* 182 F.2d 264 (7th Cir. 1950); *Burke v. State of Maine,* 265 A.2d 489 (Me.1970); *Campbell v. Murray,* 147 Neb. 820, 25 N.W.2d 419 (1946); *State ex rel. Blake v. Doeppe,* 97 W.Va. 203, 124 S.E. 667 (1924). We adopt this rule as governing extradition proceedings brought in this state.

▮ Where fugitive status is challenged by the accused, the proper role of the courts in an asylum state is to examine the sufficiency of the allegations made by the demanding state and to determine whether they show that the accused is a fugitive. Two constraints apply to this examination. First, the extradition warrant of the Idaho governor is prima facie evidence of the fugitive status. *Jacobsen v. State,* 99 Idaho 45, 48, 577 P.2d 24, 27 (1978). Secondly, the allegations of fact contained in properly authenticated documents, submitted in support of the extradition demand, are assumed to be true. I.C. § 19–4503.

▮ In this case the district judge—faced with allegations that appellant removed the child from Oregon, avoided contact with the custodial parent, quit his job in Oregon without notice the day he was to return the child, joined the child in another state, and was indicted in Oregon for such acts—held that appellant was a fugitive. Applying the rule of *Strassheim,* we believe the holding of the district court was correct.

Appellant argues that the *Strassheim* rule is inapplicable. He contends that his acts in Oregon, prior to his leaving that state on January 18—even if done with intent to interfere with the mother's custody—were mere preparatory acts and not "overt" acts constituting a "material step toward accomplishing the crime," such as the *Strassheim* rule requires. In support of this argument, appellant cites *People v. Buffum,* 40 Cal.2d 709, 256 P.2d 317 (Cal. 1953). However, *Buffum* was not an extradition case. In *Buffum* two defendants were charged with conspiracy to procure abortions in California for four women in violation of California law. The abortions were actually performed by other persons in Mexico. Defendants were convicted and they appealed. The convictions were reversed on appeal, in part because the jury was instructed that the abortions were illegal under Mexico law, when in fact, defendant had only been charged with violating California law. The court held that the California statutes would not authorize a conviction on the evidence presented, and said:

> [A] state ordinarily does not impose punishment for acts done in other jurisdictions and . . . in the absence of a contrary intent, its statutes will not be read as seeking to regulate conduct beyond its own borders.

*Id.* at 321. In the present case, however, the Oregon statute specifically prohibits the removal of a child from the state with the intent to keep the child from his legal custodian permanently or for a protracted period.

We do not disagree with the holding in *Buffum,* but we deem the case distinguishable from the present one. Moreover, the roles of the courts in the two cases are different.

In *Buffum* the California court interpreted the intent of California statutes. However, in the present case—an extradition proceeding—it would not be proper for us to interpret the intent of an Oregon statute. The Oregon statute, on its face, appears to prohibit the conduct with which appellant is charged. We will not look beyond the face of the statute. If there is any further question as to the scope of conduct covered by the Oregon statute, it is for the Oregon courts to decide.

▮ The appellant also urges us that the case of *State v. Cochran,* 96 Idaho 862, 538 P.2d 791 (1975), precludes his extradition. *Cochran* was not an extradition case. The issue there was whether Idaho had jurisdiction to bring kidnapping charges against a defendant who removed a child from the state under circumstances similar to those involved here. *Cochran* establishes that lack of jurisdiction is an absolute defense to a criminal prosecution. Assuming that Oregon has a rule of law similar to that adopt-

ed by Idaho in *Cochran,* and assuming that rule is applicable to the facts of this case, appellant could not be found guilty of the crime for which he is charged.[2] However, an asylum state is not authorized to inquire into the guilt or innocence of the accused. This question is left for the determination of the state requesting extradition. I.C. § 19–4520; *Jacobsen v. State, supra.*

We recognize that a determination of jurisdiction is not entirely equivalent to a determination of guilt or innocence. However, the determination is similar because it involves an adjudication of matters particularly within the domain of the state requesting extradition. Oregon should be free to determine its jurisdiction over the accused, just as it should be free to determine guilt or innocence of the accused, subject only to the constitutional restraints. The views of the courts in other states may be helpful to the Oregon courts, but they are not controlling. Therefore, notwithstanding the holding of the Idaho Supreme Court in *Cochran,* the Oregon courts should be free to examine the acts of appellant in Oregon and the intent which is manifested by those acts to determine whether the Oregon criminal statutes were violated.

Our power, as a court in a state whose governor has granted the extradition of a person wanted in another state, is limited to deciding:

(a) whether the extradition documents on their face are in order; (b) whether the petitioner has been charged with a crime in the demanding state; (c) whether the petitioner is the person named in the request for extradition; and (d) whether the petitioner is a fugitive.

*Michigan v. Doran,* 439 U.S. 282, 289, 99 S.Ct. 530, 535, 58 L.Ed.2d 521 (1978).

*Commencement of Criminal Proceedings.*

█ In the district court, appellant presented testimony by a person who examined the record of the Clerk of the Circuit Court of Wasco County, Oregon, and found

no criminal file concerning appellant. In addition, no criminal action against appellant had been noted in the "register" maintained by the clerk as of February 8, 1980.

As already mentioned, whether a petitioner has been charged with a crime in the demanding state is a relevant inquiry in a habeas corpus proceeding challenging extradition. *Michigan v. Doran, supra.* Appellant contends that since his name does not appear in the clerk's "register" and no file concerning this charge has been created, he has not been charged with a crime. He cites us to Oregon statutes dealing with the register and the commencement of a criminal proceeding. However, there is prima facie evidence—in the form of an authenticated copy of an indictment from Oregon and an affidavit—that as of August 16, 1979, appellant was charged with the felony crime of custodial interference in the first degree. This is all that I.C. § 19–4503 requires. The record shows that appellant had been "substantially charged" with the crime under the law of Oregon. We will—as we must—leave it to the courts in Oregon to determine whether there may be a valid defense to the charge arising from the alleged failure properly to file or to index the indictment in the clerk's records.

*Sufficiency of Allegations.*

Appellant finally contends that the Oregon governor's requisition was insufficient to allow extradition because it failed to allege that Christine A. Kerr is Aundrea's legal custodian by order or decree of a court. Appellant's claim of error, if valid, goes to a possible defense to the charge of custodial interference. As already stated, an asylum state is not permitted to inquire into the petitioner's guilt or innocence of the charge underlying the extradition order. I.C. § 19–4520, *Jacobson v. State, supra.* See also *Michigan v. Doran, supra.*

The district court's order quashing the writ of habeas corpus is affirmed.

WALTERS, C. J., and BURNETT, J., concur.

---

2. *Compare State v. Shaw,* 96 Idaho 897, 539 P.2d 250 (1975) (holding that Idaho had jurisdiction to try a defendant for the crime of nonsupport of his minor children even though defendant was residing in Nevada at the times relevant to the charge).