# INNES *v*. TOBIN, SHERIFF OF BEXAR COUNTY, TEXAS.

## ERROR TO THE COURT OF CRIMINAL APPEALS OF THE STATE OF TEXAS.

No. 532. Argued January 6, 1916.—Decided February 21, 1916.

Prior to adoption of the Constitution, fugitives from justice were surrendered between the States conformably to what were deemed to be the controlling principles of comity.

It was intended by Art. IV of the Constitution to fully embrace the subject of rendition of fugitives from justice between the States and to confer authority upon Congress to deal with that subject.

The Act of February 12, 1793, c. 7, 1 Stat. 302, now Rev. Stat., § 5278, was enacted for the purpose of controlling the subject of interstate rendition and its provisions were intended to be dominant and, so far as they operated, controlling and exclusive of state power.

Construed in the light of the principles which the statute embodies, the provisions of Rev. Stat., § 5278, expressly or by necessary implication, prohibit the surrender in one State for removal as a fugitive from justice to another State of a person who clearly was not and could not have been such a fugitive from the demanding State.

The doctrine of asylum applicable under international law by which a person extradited from a foreign country cannot be tried for an offense other than the one for which the extradition was asked does not apply to interstate rendition.

Where there is nothing in the record of a *habeas corpus* proceeding to show that the person held for surrender under interstate rendition had not been in the demanding State there is no basis for this court assuming that the rendition order conflicted with Rev. Stat., § 5278, in that respect because the record did show that such person had come into the surrendering State from a State other than the one demanding.

An Act of Congress which leaves a subject with which Congress has power to deal under the Constitution unprovided for does not necessarily take the matters within the unprovided area out of any possible state action; and so held that the exclusive character of § 5,278, Rev. Stat., does not relate to the rendition between States of criminals found in, but who had not fled to, the surrendering State but had been involuntarily brought therein.

In construing an Act of Congress, this court will not presume that because its provisions were not coterminous with the power granted by Congress, it was so framed for the purpose of leaving the subject, so far as unprovided for, beyond the operation of any legal authority whatever, state or National.

THE facts, which involve the construction of the provisions in the Federal Constitution relative to intrastate rendition and the constitutionality, construction and application of § 5278, Rev. Stat., providing for such rendition, are stated in the opinion.

*Mr. Joseph W. Bailey*, with whom *Mr. R. H. Ward* was on the brief for plaintiff in error:

Under the admitted facts, plaintiff in error was not a fugitive from justice within the meaning of the Act of Congress, and § 2, Art. 4, Const. of U. S. is not self-executing. *Hyatt* v. *Corkran*, 188 U. S. 691; *Kentucky* v. *Denison*, 24 How. 66; *Roberts* v. *Reiley*, 116 U. S. 80.

Section 5278, Rev. Stat., is plain and unambiguous. It contemplates that in order to be a fugitive from justice, there must have been a voluntary flight, as it speaks of a demand of the executive of a state for the surrender of a person as a fugitive from justice by the executive authority of a State to which such person has fled, and it provides that the indictment or affidavit must be certified as authentic by the Governor of the State from whence the person, so charged, has fled, etc., and it makes it the duty of the executive authority of the State to which such person has fled, to cause him to be arrested and secured. See *Hyatt* v. *New York*, 188 U. S. 691.

To constitute one a fugitive, there must be a flight and it does violence to the language of the statute, to hold that a person has fled into a State, when he is brought into such S ate by force, involuntarily, against his will, and by the strong arm of the law. Spear on Extradition 338–571; 2 Moore on Extradition, § 569.

A person forcibly brought into a State from a sister State is entitled to his discharge upon *habeas corpus.* See also *North Carolina* v. *Hall,* 28 L. R. A. 292; *Tennessee* v. *Jackson,* 26 Fed. Rep. 258; *Ex parte Thaw,* 214 Fed. Rep. 423; 2 Moore, page 920; *In re Robinson,* 29 Nebraska, 135; *State* v. *Simmons,* 39 Kansas, 262; *State* v. *Hall,* 40 Kansas, 338; *Re Cannon,* 47 Michigan, 481; *Ex parte McKnight,* 48 Oh. St. 588; *Ex parte Todd,* 12 S. Dak. 386.

*Mr. Hugh M. Dorsey,* with whom *Mr. C. C. McDonald* was on the brief, for defendant in error.

MR. CHIEF JUSTICE WHITE delivered the opinion of the court.

The Governor of Oregon honored a requisition made by the Governor of Texas for the delivery of the plaintiff in error for removal to Texas as a fugitive from the justice of that State. The accused was taken to Texas, tried for murder and a conspiracy to commit murder and acquitted. She was, however, not released from custody because she was ordered by the Governor of Texas under a requisition of the Governor of Georgia, to be held for delivery to an agent of the State of Georgia for removal to that State as a fugitive from justice.

Alleging these facts, an application for release by *habeas corpus* was then presented to a state court upon the charge that the extradition proceedings and the warrant of removal thereunder were "wholly null and void" because "your petitioner was never a fugitive from justice from the State of Georgia to the State of Texas within the meaning and intent of the laws of the United States regulating extradition proceedings." On the return to the writ, the court, finding the facts to be as above stated, refused to discharge the petitioner and the case is

before us to review a judgment of the Court of Criminal
Appeals which adopted the findings of the trial court and
affirmed its action.

All the Federal questions involve the meaning of § 2 of
Article IV of the Constitution which is as follows: "A
person charged in any State with treason, felony, or
other crime, who shall flee from justice and be found in
another State, shall, on the demand of the executive
authority of the State from which he fled, be delivered
up to be removed to the State having jurisdiction of the
crime;" they also depend on § 5278 of the Revised Stat-
utes which is but a reproduction of § 1 of the act of Febru-
ary 12, 1793 (Chap. 7, § 1, 1 Stat. 302), giving effect to and
establishing the methods of procedure to be resorted to
for the purpose of enforcing the provisions of the Constitu-
tion on the subject to the extent that their execution was
by the statute provided for.

Broadly there is but a single question for consideration,
Was the order for rendition repugnant to the Constitu-
tion and the provisions of the statute? But two inquiries
are involved in its solution: First, was the rendition order
void because under the facts there was no power to award
it except by disregarding express prohibitions or require-
ments of the Constitution or statute or by necessary
implication adversely affecting rights thereby created;
and second, even although this was not the case, was the
order nevertheless void because under the circumstances
it dealt with a situation which by the effect of the statute
was taken out of the reach of state authority even although
no express provision was made in the statute for deal-
ing with such condition by any authority, state or Fed-
eral? We consider the two inquiries under separate head-
ings.

*First.* For the purpose of the solution of the inquiry
under this heading we treat the following proposition as
beyond question: (a) That prior to the adoption of the

Constitution fugitives from justice were surrendered between the States conformably to what were deemed to be the controlling principles of comity. *Kentucky* v. *Dennison*, 24 How. 66, 101, 102; 2 Moore on Extradition and Interstate Rendition, p. 820 *et seq.* (b) That it was intended by the provision of the Constitution to fully embrace or rather to confer authority upon Congress to deal with such subject. *Prigg* v. *Pennsylvania*, 16 Pet. 539; *Kentucky* v. *Dennison, supra; Taylor* v. *Taintor*, 16 Wall. 366; *Appleyard* v. *Massachusetts*, 203 U. S. 222. (c) That the act of 1793 (now Rev. Stat., § 5278) was enacted for the purpose of controlling the subject in so far as it was deemed wise to do so, and that its provisions were intended to be dominant and so far as they operated controlling and exclusive of state power. *Prigg* v. *Pennsylvania, supra; Kentucky* v. *Dennison, supra,* pp. 104, 105; *Mahon* v. *Justice,* 127 U. S. 700; *Lascelles* v. *Georgia,* 148 U. S. 537.

Coming in the light of these principles to apply the statute, it is not open to question that its provisions expressly or by necessary implication prohibited the surrender of a person in one State for removal as a fugitive to another where it clearly appears that the person was not and could not have been a fugitive from the justice of the demanding State. *Ex parte Reggel,* 114 U. S. 642; *Roberts* v. *Reilly,* 116 U. S. 80; *Hyatt* v. *Corkran,* 188 U. S. 691; *Bassing* v. *Cady,* 208 U. S. 386, 392.

From this it results that the first inquiry here is, did it appear that the accused was a fugitive from the justice of the State of Georgia? While the facts which we have stated do not disclose affirmatively that she was ever in Georgia and the date, if at all, of her flight from that State, we think that she was such a fugitive is to be assumed for three obvious reasons: because there was no question of such fact made in the application for *habeas corpus* since it is apparent on the face of the application that the ground of relief relied upon was not that there had

been no flight from Georgia, but that there was and could have been no flight into Texas since the coming into that State was involuntary and resulted solely from the extradition proceedings; because that view of the subject was assumed, both in the elaborate opinion of the court below and that of the dissenting judge, to be unquestioned; and finally because neither in the assignments of error in this court nor in the arguments pressed upon our attention is the contrary view insisted upon or even suggested. From that aspect, therefore, there is no ground for saying that the extradition order conflicted with the express provision of the statute.

Was there a conflict between the statute and the order for removal to Georgia arising by necessary implication from the fact that the accused had been brought into the State of Texas on a requisition upon the State of Oregon and had not been released from custody or been returned to Oregon, is the only remaining question under this heading. While it is quite true, as pointed out in the opinion of the court below, and in that of the judge who dissented, that there are some decided cases and opinions expressed by text writers which sustain the affirmative view of this inquiry, the subject is here not an open one since it has been expressly foreclosed by the decision in *Lascelles* v. *Georgia,* 148 U. S. 537. In that case the issue for decision was whether a person accused who had been removed to the State of Georgia from another State on extradition proceedings for trial for a specified crime was liable in Georgia to be tried for another and different crime. Reviewing the whole subject and calling attention to the broad lines of distinction between international extradition of fugitives from justice and interstate rendition of such fugitives under the Constitution and the provisions of the act of Congress and the error of assuming that the doctrine of asylum applicable under international law to the one case was applicable to the other, it was

held that the right to prosecute for such other offense existed. The court said (p. 542): "Neither the Constitution, nor the act of Congress providing for the rendition of fugitives upon proper requisition being made, confers, either expressly or by implication, any right or privilege upon such fugitives under and by virtue of which they can assert, in the State to which they are returned, exemption from trial for any criminal act done therein. No purpose or intention is manifested to afford them any immunity or protection from trial and punishment for any offences committed in the State from which they flee. On the contrary, the provision of both the Constitution and the statutes extends to *all* crimes and offences punishable by the laws of the State where the act is done. *Kentucky v. Dennison*, 24 How. 66, 101, 102; *Ex parte Reggel*, 114 U. S. 642."

We are thus brought to the remaining heading, which is,

*Second.* Although the order for rendition was not in conflict either expressly or by necessary implication with any of the provisions of the Constitution or statute, was it nevertheless void under the circumstances because it dealt with a subject with which it was beyond the power of the State to deal and which was therefore brought as the result of the adoption of the statute within exclusive Federal control although no provision dealing with such subject is found in the statute? To appreciate this question, the proposition relied upon needs to be accurately stated. It is this: The Constitution provides for the rendition to a State of a person who shall have fled from justice and be found in another State, that is, for the surrender by the State in which the fugitive is found. This, it is conceded, would cover the case and sustain the authority exercised, as the accused was a fugitive from the justice of Georgia and was found in Texas. But the proposition insists that the statute is not as broad as the Constitution since it provides not for the surrender of the fugitive

by the State in which he is found but only for his sur-
render by the State into which he has fled, thus leaving
unprovided for the case of a fugitive from justice who is
found in a State but who has not fled into such State
because brought into such State involuntarily by a requisi-
tion from another. And the argument is supported by the
contention that as the statute exercises the power con-
ferred by the Constitution and is exclusive, it occupies
the whole field and prohibits all state action even upon a
subject for which the statute has not provided and which
therefore in no manner comes within its express terms.
But we are of the opinion that the contention rests upon
a mistaken premise and unwarrantedly extends the scope
of the decided cases upon which it relies. The first, be-
cause it erroneously assumes that although the statute
leaves a subject with which there was power to deal under
the Constitution unprovided for, it therefore took all
matters within such unprovided area out of any pos-
sible state action. And the second, because while it is
undoubtedly true that in the decided cases relied upon
(*Kentucky* v. *Dennison, supra; Roberts* v. *Reilly, supra;
Hyatt* v. *Corkran, supra*) the exclusive character of the
legislation embodied in the statute was recognized, those
cases when rightly considered go no further than to estab-
lish the exclusion by the statute of all state action from
the matters for which the statute expressly or by necessary
implication provided.

No reason is suggested nor have we been able to dis-
cover any, to sustain the assumption that the framers
of the statute in not making its provisions exactly co-
terminous with the power granted by the Constitution
did so for the purpose of leaving the subject so far as un-
provided for beyond the operation of any legal authority
whatever, state or national. On the contrary, when the
situation with which the statute dealt is contemplated,
the reasonable assumption is that by the omission to

extend the statute to the full limits of constitutional power it must have been intended to leave the subjects unprovided for not beyond the pale of all law, but sub-ject to the power which then controlled them—state authority until it was deemed essential by further legislation to govern them exclusively by national authority. In fact, such conclusion is essential to give effect to the act of Congress, since to hold to the contrary would render inefficacious the regulations provided concerning the subjects with which it dealt. This becomes manifest when it is considered that if the proposition now insisted upon were accepted, it would follow that the delivery of a criminal who was a fugitive from justice by one State on a requisition by another would exhaust the power and the criminal, therefore, whatever might be the extent and character of the crimes committed in other States, would remain in the State into which he had been removed without any authority to deliver him to other States from whose justice he had fled. And this, while paralyzing the authority of all the States, it must be moreover apparent, would cause them all to become involuntary asylums for criminals, for no method is suggested by which a criminal brought into a State by requisition if acquitted could be against his will deported, since to admit such power would be virtually to concede the right to surrender him to another State as a fugitive from justice for a crime committed within its borders.

It follows from what we have said that the court below was right in refusing to discharge the accused and its judgment therefore must be and it is

*Affirmed.*

By stipulation of counsel a similar judgment will be entered in case of *Victor E. Innes* v. *Tobin, Sheriff*, No. 533.