## EX PARTE HUGH E. COLEMAN.

No. 25536. November 28, 1951.
Appellant's Motion for Rehearing Denied January 9, 1952.
Appellant's Second Motion for Rehearing Denied (Without
Written Opinion) February 20, 1952.

Hon. Fred Erisman, Judge Presiding.

*Florence, Florence & Meredith,* by *D. S. Meredith, Jr.,* Gilmer and Longview, for appellant.

*R. L. Whitehead,* Criminal District Attorney, Longview, and *George P. Blackburn,* State's Attorney, Austin, for the state.

DAVIDSON, Judge.

Relator in the court below, appellant here, sought by writ of habeas corpus before the judge of the district court of Gregg County his discharge from arrest under the executive warrant of the Governor of this state, issued June 28, 1951, upon the requisition of the Governor of the State of California, dated June 21, 1951. After hearing, the relief prayed for was denied and appellant was remanded to the custody of the arresting officer. Hence this appeal.

Appellant stands charged by complaint in the State of California with failure to provide for his five-year-old child, which offense is alleged to have been committed in San Bernardino County on or about the 13th day of January, 1951.

In Ex Parte King, 236 S. W. 2d 806, and authorities there cited, we held that one who was not in the demanding state at the time the offense of failing to support a child was alleged to have been committed could not be extradited therefor.

Appellant insists that the instant facts bring this case within the rule stated. It is the position of the state that such rule has now been abrogated and superseded by acts passed by the 52nd Legislature in 1951—which are: the "Uniform Reciprocal Enforcement of Support Act," being Chap. 377, Acts Regular Session of the 52nd Legislature, in 1951, effective June 2, 1951, appearing as Art. 2328b-1-2, Vernon's Ann. Civ. Statutes, and hereafter referred to as the Support Act; and the "Uniform Criminal Extradition Act," being Chap. 438, Acts Regular Session 52nd Legislature, in 1951, effective June 15, 1951, appearing as Art. 1008a, Vernon's C. C. P., and hereafter referred to as the Extradition Act.

The applicable provision of Sec. 5 of the Support Act reads as follows:

"The Governor of this State . . . . may surrender on demand by the Governor of any other state any person found in this State who is charged in such other state with the crime of failing to provide for the support of a person in such other state. The provisions for extradition of criminals not inconsistent herewith shall apply to any such demand although the person whose surrender is demanded was not in the demanding state at the time of the commission of the crime and although he had not fled therefrom. Neither the demand, the oath nor any pro-

ceedings for extradition pursuant to this Section need state or show that the person whose surrender is demanded has fled from justice, or at the time of the commission of the crime was in the demanding or the other state."

Sec. 3 of the Extradition Act reads as follows:

"No demand for the extradition of a person charged with crime in another state shall be recognized by the Governor unless in writing alleging, except in cases arising under Section 6, that the accused was present in the demanding state at the time of the commission of the alleged crime, and that thereafter he fled from the state, and accompanied by a copy of an indictment found or by information supported by affidavit in the state having jurisdiction of the crime, or by a copy of an affidavit made before a magistrate there, together with a copy of any warrant which was issued thereupon; or by a copy of a judgment of conviction or of a sentence imposed in execution thereof, together with a statement by the Executive Authority of the demanding state that the person claimed has escaped from confinement or has broken the terms of his bail, probation or parole. The indictment, information, or affidavit made before the magistrate must substantially charge the person demanded with having committed a crime under the law of that state; and the copy of indictment, information, affidavit, judgment of conviction or sentence must be authenticated by the Executive Authority making the demand; provided, however, that all such copies of the aforesaid instruments shall be in duplicate, one complete set of such instruments to be delivered to the defendant or to his attorney."

Each of these acts was in force and effect at the time of the issuance of the requisition in this case. Neither of the acts had been passed by the Legislature at the time the crime was alleged to have been committed. The Extradition Act is junior in point of time of passage as well as effectiveness to that of the Support Act.

The Support Act authorizes the extradition of one charged with non-child-support, although he was not in the demanding state at the time of the alleged offense and had not fled therefrom; the Extradition Act, except in cases arising under the provisions of Sec. 6, requires that the demand allege the accused was present in the demanding state at the time of the crime charged.

The instant demand of the Governor of the State of California does not state that appellant was present in the demanding state at the time of the commission of the alleged crime, and to that extent comes within the provisions of the Extradition Act relating thereto. On the other hand, the demand shows that the crime for which appellant was sought to be extradited was the failure to support his child, and therefore comes within the the provision of the Support Act authorizing extradition without reference to presence in the demanding state.

The Extradition Act, which is the junior act, carries a general repealing clause for all inconsistent acts and parts of acts.

The question thus arises as to whether the Extradition Act repealed the provision of the Support Act authorizing extradition in non-support cases regardless of presence in the demanding state.

The two acts are in *pari Materia* in that each deals with the question of extradition and was enacted by the same legislature, becoming effective only thirteen days apart.

It is not every express repealing clause that has the effect of repealing inconsistent statutes; the intent of the legislature may be so evident as to preclude any such construction. 39 Tex. Jur., Statutes, Sec. 68, p. 132; First National Bank of Giddings v. Lee County Cotton Oil Co., 274 S. W. 127; Berry v. State, 69 Tex. Cr. R. 602, 156 S. W. 626.

By no process of reasoning can we bring ourselves to the conclusion that the legislature intended the Extradition Act to take from the Support Act, which it had enacted a short time prior to the passage of the Extradition Act, the provision relative to extradition in non-child-support cases. To the contrary, the legislative intent is apparent that extradition in non-child-support cases was to be governed by the provisions of the Support Act in so far as presence of the accused in the demanding state was concerned, rather than by the provision of the Extradition Act relative thereo.

The conclusion expressed renders unnecessary a determination of the question as to whether non-child-support cases are within the exemptions contained in Sec. 6 of the Extradition Act.

The validity of the Support Act as well as that of the Extra-

dition Act, in so far as they authorize the extradition of persons who were not present in the demanding state at the time of the commission of the crime and had not fled from justice of the demanding state, is assailed as being contrary to the Federal Constitution and the acts of Congress regulating interstate extradition.

This question appears to have been settled to the contrary. In 22 Am. Jur., Extradition, Sec. 9, p. 250, the rule is stated as follows:

"A state may also, in the exercise of its reserved sovereign powers and as an act of comity to a sister state, provide by statute for the surrender, on requisition, of persons who are indictable for a crime committed through their constructive presence in such sister state, even though they have never been corporally within such state and have never fled therefrom to escape arrest and punishment, since, in the absence of such statute, such persons are not subject to extradition by the latter state."

To the same effect is 35 C. J. S., Extradition, Sec. 3, p. 320. The case of Ex Parte Innes, 77 Tex. Cr. R. 351, 173 S. W. 291 (Innes v. Tobin: 240 U. S. 127, 60 L. Ed. 562, 36 S. Ct. 29), is cited as a supporting authority. See, also, 151 A. L. R. 233-241.

The conclusion is reached that the provision of the Support Act authorizing the extradition of one for the crime of non-child-support, although not present in the demanding state at the time of the commission of the crime charged and not having fled therefrom, is a valid, enforceable statute and not subject to the restrictions contained in the Extradition Act as to presence of the accused in the demanding state.

The Support Act is a procedural statute, and no valid reason is perceived which would preclude its use in the instant proceeding; no vested or fixed right of the appellant has been usurped thereby.

Appellant challenges the sufficiency of the proceeding touching the issuance of the requisition as not being in compliance with the federal statute regarding such matters.

The certificate of the governor of the demanding state that the "complaint and supporting papers which I certify are authentic and duly authenticated" made a prima facie case that

the requirements of law had been complied with in the issuance thereof. Ex Parte Noble, 151 Tex. Cr. R. 1, 198 S. W. 2d 893; Ex Parte Barnett, 148 Tex. Cr. R. 628, 190 S. W. 2d 361.

The burden was upon the appellant to overcome this prima facie case. No facts here presented are deemed sufficient to do so.

Believing that appellant's extradition was authorized, the judgment of the trial court is affirmed.

Opinion approved by the court.

### ON MOTION FOR REHEARING.

MORRISON, Judge.

Appellant has presented us with a most forceful motion for rehearing in which he urges that the application we gave to the Extradition and Support Act in the case at bar constituted an abridgment of appellant's rights under Section 16, Article 1, of the Texas Constitution, contending that we held the same to have ex post facto effect. In order to clarify the issue, we restate some of the facts. The complaint against appellant filed in California alleged that the offense with which he is charged was committed on January 13, 1951.

The Support Act and the Extradition Act became effective in Texas on June 2 and June 15, 1951, respectively.

The requisition of the Governor of California was dated June 21, 1951.

Appellant cites us a number of cases dealing with ex post facto and retroactive laws, none of which, however, deal with the question of extradition. We have found no Texas cases on the precise question here presented. We do find, however, almost the identical question decided in the case In re Giacomo, 7 Fed. Cases 366. This case deals with international extradition, but the rules therein expressed, we feel, should apply to interstate extradition. There, Giacomo was charged with the offense of murder in the Kingdom of Italy, alleged to have been committed on August 29, 1867. An extradition treaty between the United States and Italy was concluded on March 23, 1868. Relator was indicted at Naples March 19, 1869, and brought before a United States Commissioner on a writ of extradition in 1874, where

he interposed the same plea of ex post facto as does relator here. The court, in ordering relator extradited, held as follows:

"It is contended, in the present case, that the effect of extradition for a crime committed before the making of the treaty is to punish the party by depriving him of his liberty, and sending him out of the United States, and delivering him up to a foreign authority and to punish him for remaining and being found in the United States, when he could not have been thus punished at the time the treaty was made. But the fact of extradition cannot properly be regarded as 'punishment', within the sense of that word, as used when considering the subject of ex post facto law. There is no offence against the United States, and no trial for any such offence, and no punishment for any such offence. It is true, that extradition relates only to criminal offences, but it relates only to criminal offences committed abroad; and no treaty for extradition, *nor any statute passed in relation to extradition,* purports to punish the fugitive for the offence. Both treaties and statutes assume that he is to be tried upon the charge, if not already convicted. With the question of punishment, or its kind or degree, they have no concern. They merely declare that the protection of this government shall not be interposed between the fugitive and the laws which he has violated, and that, if he flees hither for such protection, the injured government may take him hence, and shall be aided therein. This government neither assumes nor exercises any power to punish for the crime. The fact that the fugitive is deprived of his liberty does not make such deprivation a punishment. Loss or suffering to the party supposed to be punished is not punishment, in a legal sense, unless the punishment is inflicted as a penalty for the commission of crime. If extradition for an anterior crime is punishment, extradition for a subsequent crime is equally punishment. But, it is an incorrect idea of punishment, to say that the United States, in every case of extradition, is punishing the party for the offense committed abroad by extraditing him. It being assumed that the prisoner committed a murder abroad, and then fled to the United States, and that the treaty was afterwards made, it is not a punishment of the prisoner to deprive him of his liberty, under the treaty, and surrender him to the foreign authority, so as to make the treaty obnoxious to the objection that it is an ex post facto law." (Italics ours.)

With the reasoning of this opinion, we concur.

Relator contends in his oral argument that, since the trial

court based his decision on the Extradition Act as demonstrated by his Bill of Exception No. 3, this court is bound in its consideration of this appeal to Extradition Act alone. This position is untenable.

"The case on appeal will be decided on the theory on which it was prosecuted or defended in the trial court. But a decision will not be reversed merely because it was given for a wrong or an insufficient reason; if the decision in question is correct upon any theory of law applicable to the case, it will be sustained regardless of the reason advanced." 4 Tex. Juris. Sec. 375, p. 529.

Relator next contends that, since he introduced at the hearing the certificate of the Governor of the demanding state and the accompanying papers for the limited purpose of showing the illegality of the Executive Warrant of the Governor of Texas, the same could not be considered by this court for any other purpose. We remind relator of the fact that we considered these documents on the question of the legality or illegality of the Executive Warrant of the Governor of Texas and concluded such Executive Warrant to be a legal one.

Relator again urges the contention that the Extradition Act, having been passed thirteen days subsequent to the passage of the Support Act, repealed the same. With this contention, we cannot agree and feel that we have sufficiently discussed the same in our original opinion herein.

Remaining convinced that our original holding herein is sound, relator's motion for rehearing is overruled.