Eddie **EARHART**, Donnie Hodges, Robert L. Brandon, Donald W. Wallace, and Dotson Page, Appellees,

v.

David **HICKS**, Sheriff of Stewart County, Appellant.

Court of Criminal Appeals of Tennessee, at Nashville.

Feb. 1, 1983.

**874**

Jack Rudolph, Clarksville, for appellee Earhart.

Gary J. Hodges, Clarksville, for appellee Hodges.

Frank Louderback, St. Petersburg, for appellees Brandon and Wallace.

William P. Redick, Jr. and Lionel R. Barrett, Jr., Nashville, for appellee Page.

Kymberly Hattaway, Asst. Atty. Gen., Nashville, Daniel W. Cook, Asst. Dist. Atty. Gen., Ashland City, for appellant.

## OPINION

DAUGHTREY, Judge.

The petitioners in this habeas corpus action successfully contested the state's authority to hold them in custody for extradition to the State of Mississippi, where they had been indicted for conspiracy to violate Mississippi's controlled substances act. The state appeals the trial court's order granting the writ and ordering the petitioners' discharge. We conclude that the result reached by the trial judge was correct, and we therefore affirm the judgment.

The issue in this case is whether the extradition papers were legally sufficient to permit rendition on the Mississippi conspiracy charge.

It appears from the record that the alleged conspiracy actually arose in Tennessee and involved the smuggling of a large amount of marijuana by air from Central

America. On the flight back to Tennessee, the pilot experienced engine problems and was forced to land his small aircraft in Forrest County, Mississippi. He was apprehended with approximately 360 pounds of marijuana in the plane. He subsequently made a statement to law enforcement officials that implicated the petitioners in the smuggling scheme.

The resulting indictment charged that "between the 14th day of March, 1982, and the 28th day of June, 1982..., in Forrest County, Mississippi," the pilot of the airplane and the petitioners "did willfully, unlawfully, and feloniously conspire, combine, confederate and agree, together and with each other, to commit a crime against the State of Mississippi, to possess more than a kilogram of marijuana with the intent to sell...." Nowhere in the indictment is it alleged that the petitioners actually committed acts outside Mississippi which gave rise to a conspiracy or other crime within that state.

Likewise, the applications for requisition filed with the governor of Mississippi by the Forrest County district attorney recite that each of the petitioners was "personally and physically present in the State of Mississippi at the time [the crime of conspiracy was committed in Forrest County]," that they had "fled from the State of Mississippi" and were "fugitive[s] from justice of th[at] State." Based on these applications, the governor of Mississippi issued requisitions for the petitioners' extradition which stated that each of them had "fled from the justice of this State and ... taken refuge in the State of Tennessee."

The Governor of Tennessee subsequently honored this demand and issued rendition warrants, each of which recited that the various petitioners had "committed the crime of conspiracy ... in [the] State [of Mississippi]" and that each was "a fugitive from the justice of said State and has taken refuge in the State of Tennessee."

In the meantime, the petitioners had been arrested on fugitive warrants in Stewart County, Tennessee. Attached to the warrants was the affidavit of a T.B.I. agent who swore that he had investigated the offense for which the petitioners had been indicted in Mississippi and had presented his information to the Forrest County grand jury. Nothing in the affidavit ties the individual petitioners to the airplane, its pilot or its contents, nor is there any allegation that the petitioners committed acts outside the state which resulted in a crime in Mississippi.

At a hearing on the habeas corpus petitions, the petitioners testified that they had not been present in Mississippi when the offense occurred. They took the position that the state had failed to establish their status as fugitives and that they should therefore be discharged. The trial judge specifically found that the proof showed "beyond any doubt" that none of the petitioners had been in Mississippi during the period of time set out in the indictment. The uncontroverted evidence in the record fully supports this finding.

The power to extradite originates in the federal constitution, which provides:

A person charged in any state with treason, felony, or other crime, who shall flee from justice, and be found in another state, shall on demand of the executive authority of the state from which he fled, be delivered up, to be removed to the state having jurisdiction of the crime.

U.S. Const., Art. IV, § 2. Under this section, it was long held that the accused must be shown to have been actually and not merely constructively present within the demanding state at the time the offense was committed. *Hyatt v. People ex rel. Cockran,* 188 U.S. 691, 711–712, 23 S.Ct. 456, 458–459, 47 L.Ed. 657 (1903). The courts reasoned that for constitutional purposes, one had to have been present in the first instance in order to be deemed to have "fled." However, the courts also recognized that by agreement the states were free to define who is a fugitive from justice and to extradite such fugitives on the basis of state law. *Ex parte Innes,* 77 Tex.Cr. App. 351, 173 S.W. 291 (1915), aff'd 240 U.S. 127, 36 S.Ct. 290, 60 L.Ed. 562 (1916).

In 1951, Tennessee followed the lead of other jurisdictions in adopting the Uniform Criminal Extradition Act (UCEA), now in effect in all 50 states. *See* T.C.A. § 40–1001 *et seq.* Under the UCEA, "it is the duty of the governor of this state to have arrested and delivered up to the executive authority of any other state . . . any person charged in that state . . . who has fled from justice and is found in this state." T.C.A. § 40–1009. But the governor may not honor the demand of another state unless it is in writing, T.C.A. § 40–1010, authenticated by the executive authority making the demand, *id.,* and in compliance with the requirements of T.C.A. § 40–1012, which provides:

*Allegations required in demand for extradition*—A warrant of extradition must not be issued unless the documents presented by the executive authority making the demand show that:

I. Except in cases arising out under § 40–1013, the accused was present in the demanding state at the time of the commission of the alleged crime, and thereafter fled from the state;

II. The accused is now in this state; and

III. He is lawfully charged by indictment found or by information filed by a prosecuting officer and supported by affidavit to the facts, or by affidavit made before a magistrate in that state, with having committed a crime under the laws of that state, or that he has been convicted of a crime in that state and has escaped from confinement or broken his parole.

Under Section 6 of the Uniform Act, codified as T.C.A. § 40–1013, the allegations of the demand need not show the fugitive's presence in the demanding state, if they otherwise meet the exception referred to in § 40–1012(I):

*Acts resulting in crime in state in which accused is not present*—The governor of this state may also surrender, on demand of the executive authority of any other state, any person in this state charged in such other state in the manner provided

in § 40–1012 with committing an act in this state, or in a third state intentionally resulting in crime in the state whose executive authority is making the demand; and the provisions of this chapter not otherwise inconsistent shall apply to such cases, notwithstanding that the accused was not in that state at the time of the commission of the crime, and has not fled therefrom.

T.C.A. § 40–1013, codifying UCEA § 6.

■ The purpose of statutory requirements such as those found in § 40–1012 is to give the governor of the asylum state a sufficient basis upon which to determine that extradition is justified. *Application of Morgan,* 244 Cal.App.2d 903, 53 Cal.Rptr. 642, 648 (1966). In view of this policy, the determinative question in this case becomes clear: Once the petitioners were able to prove that they were not "present in the demanding state at the time of the commission of the alleged crime," were the extradition documents nevertheless sufficient to permit their extradition under the exception delineated in § 40–1013? Or must the warrant be deemed invalid because those documents failed to include allegations that would bring the petitioners within the exception?

The state insists that the petitioners were subject to extradition under § 40–1013, because the evidence at the hearing established conduct on their part in Tennessee that gave rise to a conspiracy, an overt act of which took place in Mississippi. The state argues, therefore, that the *proof* brings these petitioners squarely within § 40–1013, and that their discharge was unwarranted.

■ We cannot accept this argument. As noted above, the purpose of §§ 40–1012 and 40–1013 is "to convince the respective Governors that extradition is justified." *Application of Morgan, supra,* 53 Cal.Rptr. at 648. Thus, the reported cases interpreting Section 6 of the Uniform Act establish conclusively that the extradition *documents,* as well as the proof, must show that the accused committed acts in the asylum state

or a third state that resulted in a crime in the demanding state.

Indeed, a minority of the states hold to a strict rule in this regard, requiring that such an allegation appear in the indictment, information, or affidavit of complaint filed in the demanding state. *See, e.g., Ennist v. Baden,* 158 Fla. 141, 28 So.2d 160 (1946), in which the supporting New York indictment made no reference to acts committed by the defendant outside the state of New York, but an amended requisition did utilize the statutory language of UCEA § 6. The Florida Supreme Court interpreted the language of Section 6 ("any person in this state charged in such other state ... with committing an act in this state, etc.") to mean that the fugitive must be so charged in the indictment, information or affidavit. *Id.* 28 So.2d at 162. The court thus held that because the New York indictment failed to meet the test of Section 6 and because the petitioner had shown that he was not present in New York when the crime was committed, the fugitive warrant was invalid. *Id.* 28 So.2d at 163. *See also In re Cooper,* 53 Cal.2d 772, 3 Cal.Rptr. 140, 349 P.2d 956 (1960) (California counterpart of T.C.A. § 40–1013 requires an allegation in the supporting indictment, information, or affidavit that the accused committed acts in the asylum state resulting in an offense in the demanding state, although affidavit need not recite "sources of information" that such acts were in fact committed).

■ It appears, however, that the greater number of states follow a more liberal rule, one that is in keeping with the general principle of law that in extradition matters the courts should not "discharge the accused upon technical grounds ... unless it be clear that what was done was in plain contravention of law." *State ex rel. Trigg v. Thompson,* 196 Tenn. 147, 270 S.W.2d 332, 334 (1954), quoting from *Compton v. Alabama,* 214 U.S. 1, 8, 29 S.Ct. 605, 607, 53 L.Ed. 385 (1909). *See also McCullough v. Darr,* 219 Kans. 477, 548 P.2d 1245, 1248 (1976). The more relaxed view requires no formal recitation in the charging instrument, but instead permits the governor and the courts of the asylum state to read the demand, the charge, and all supporting papers together to determine whether the requirements of Section 6 have been substantially met:

A substantial compliance is had with [Section 6] if the papers upon which the demand is based show that [the accused] was outside the demanding State and committed an act while away from that State, or in this, or in another State, which intentionally resulted in a crime being committed in the demanding State....

*People ex rel. Swanson v. Peck,* 127 N.Y. S.2d 751, 755, 205 Misc. 326 (1953). *Accord Self v. People,* 133 Colo. 524, 297 P.2d 887, 889 (1956), relying upon *Harris v. State,* 257 Ala. 3, 60 So.2d 266, 267 (1951); *Clayton v. Wichael,* 258 Iowa 1037, 141 N.W.2d 538, 540 (1966); *State v. Holeb,* 188 Neb. 319, 196 N.W.2d 387, 389 (1972).

But in no reported cases that have come to our attention have the courts upheld the validity of a contested rendition warrant without Section 6 documentation in the demand or the supporting papers or both. Although the exact language of the statute need not be utilized, the courts will require a "substantial recital of facts necessary to the validity of [the warrants] issuance" under UCEA § 6. *People ex rel. Swanson v. Peck, supra,* 127 N.Y.S.2d at 754. The only possible exceptions are found in the cases of *Ex parte Campbell,* 147 Neb 820, 25 N.W.2d 419, a 1946 case predating *State v. Holeb, supra,* and *Harrison v. State,* 38 Ala. App. 60, 77 So.2d 384, 385–386 (1954), a case under the Uniform Reciprocal Enforcement of Support Act involving a provision similar to UCEA § 6. In both instances the charging instrument failed to allege that the accused had committed acts outside the demanding state that resulted in a crime in that state. The courts held, however, that because the requisition from the demanding state was not in the record, the regularity of the demand in terms of Section 6 documentation could be assumed, since the burden is on the accused to establish the irreg-

ularity of the warrant. Thus, as the *Campbell* court summarized:

> In the absence of proof to the contrary, it will be presumed that the Governor (of the demanding state) acted in conformity with law in the issuance of his warrant of extradition.

25 N.W.2d at 424.

■ There is no "absence of proof" in this case. It clearly appears from the rendition warrant and the supporting documents, *all of which are included in the record,* that the governors of both Mississippi and Tennessee based their respective determinations on allegations that the petitioners were present in the state of Mississippi at the time of the offense and thereafter fled. Once that allegation was refuted, as it plainly was in this case, the extradition papers were rendered defective, for nowhere in them are there any allegations that would satisfy the requirements of § 40–1013.

We do not have before us a situation such as that in *People ex rel. Brenner v. Sain,* 29 Ill.2d 239, 193 N.E.2d 767 (1963), in which the governor's warrant was set out by means of a printed form and not only recited that the accused was a fugitive who had fled from Wisconsin and taken refuge in Illinois, but also contained a typewritten insertion utilizing Section 6 language. The Illinois court held that even though the printed portion had not been stricken, it could be disregarded as surplusage. The typewritten interdelineation was thus given controlling effect. *Id.* 193 N.E.2d at 768. *Accord State v. Holeb, supra; Clayton v. Wichael, supra.* By contrast, if we comply with the state's request that we disregard similar "surplusage" in the papers in this case, we are left with no basis for extradition at all.

Most of the cases construing Section 6 of the Uniform Act have involved non-support actions. However, the provision has been held to apply to conspiracy cases in which the co-conspirator remains outside the demanding state. *See, e.g., Culbertson v. Sweeney,* 70 Ohio App. 344, 44 N.E.2d 807 (1942). But contrary to the state's insistence, we do not believe that the mere fact that the criminal charge in this case involves conspiracy is sufficient to relieve the demanding state of the duty of complying with § 40–1013.

Finally, we address the matter of the trial court's finding that the petitioners should be discharged because the proof showed that they did not commit acts "*intentionally* resulting in crime in the [demanding] state." After hearing a good deal of testimony relating to the facts of the conspiracy charge, the judge apparently decided that the plane's presence in Mississippi was *fortuitous rather than "intentional."* He noted specifically that there was no evidence that the petitioners intended to violate the laws of Mississippi, and he therefore ruled that they were not subject to extradition under T.C.A. § 40–1013.

■ We think this reasoning is incorrect. In the first place, the trial court could not properly reach the question of whether or not the proof was adequate under § 40–1013, because, as demonstrated above, the extradition papers are insufficient on their face to establish a basis for rendition under § 40–1013. But beyond this, we note that the trial court's interpretation of the term "intentionally" as used in this statute is apparently unique in American law. We are unable to find cases to support his ruling that under § 40–1013 the petitioners not only must commit acts outside the demanding state which give rise to a crime, but also must intend to violate the law of that state. This would mean that co-conspirators who set a conspiracy in motion intending that it culminate in one state would be immune from extradition if the conspiracy was later consummated in a third state. A more reasonable interpretation, and the one apparently taken for granted in the reported cases, is that the statutory term "intentionally" modifies the phrase it immediately precedes, *i.e.,* "resulting in crime." To read the phrase otherwise is to convert the habeas corpus hearing into a "mini-trial" on the substantive issues contained in the out-of-state indictment. As an attorney for one of the petitioners

noted, this is substantially what occurred at the hearing in this case when the trial judge sifted through the evidence of conspiracy, trying to determine "intent." Such a result is in conflict with the statutory proscription in T.C.A. § 40–1014, which provides that "[t]he guilt or innocence of the accused as to the crime of which he is charged may or may not be inquired into . . ." except to establish identity.

The extradition procedure in this case was explicitly predicated on T.C.A. § 40–1012. However, the petitioners were able to carry their burden under that provision by establishing that they had not been present in the demanding state at the time of the offense. Because the requisition papers were totally devoid of any documentation to support extradition under T.C.A. § 40–1013, we hold that the state was improperly permitted to present proof that the petitioners committed acts in Tennessee that resulted in a crime in the demanding state, in an attempt to bring the case within the provisions of § 40–1013.

Under the Uniform Act, the demanding state need no longer demonstrate that the accused was actually present at the time of the offense. As one court has noted, anyone who "seeks to evade the administration of justice in the state where the offense was perpetrated is, in essence, a fugitive from the justice of that state." *State v. Holeb, supra,* 196 N.W.2d at 389. But the provisions of the UCEA do not relieve the demanding state of the duty of documenting its allegations that the accused is indeed "a fugitive from justice" in this sense.

The record shows that the extradition papers in this case were legally insufficient, thus rendering the fugitive warrant and the governor's warrant invalid. It follows that the trial judge reached the right result in ordering discharge of the petitioners, if not entirely for the right reason. The judgment of the trial court is therefore affirmed.

TATUM and SCOTT, JJ., concur.