875 F.2d 1497
 Philip ORTEGA, Plaintiff-Appellee/Cross-Appellant,
v.
The CITY OF KANSAS CITY, KANSAS, A Municipal Corporation,
Police Chief Allan Meyers, Detective Randall Murphy, Lt.
Ronald L. Miller, Detective Louis Johnson, Patrolman Joseph
Ward, Patrolman Darrell Marmon, Patrolman Bernard J. Smith,
Defendants-Appellants/Cross-Appellees.
 Nos. 87-1475, 87-1520.
 United States Court of Appeals,
Tenth Circuit.
 May 31, 1989.
Rehearing Denied July 7, 1989.
 
 Richard T. Merker (Thomas D. Billam with him on the briefs), of Wallace, Saunders, Austin, Brown & Enochs, Chartered, Overland Park, Kan., for plaintiff-appellee/cross-appellant.
 Maurice J. Ryan, Asst. City Atty., Kansas City, Kan., for defendants-appellants/cross-appellees.
 Before ANDERSON, SETH and BRORBY, Circuit Judges.
 BRORBY, Circuit Judge.
 
 
 1
 Philip Ortega (Ortega) sought damages from the City of Kansas City, Kansas (the City), and multiple law enforcement officials (the Officials), under 42 U.S.C. Sec. 1983 (1981) for deprivation of extradition rights in connection with his arrest in a sting operation. The jury returned a verdict against the City and the Officials, and awarded Ortega compensatory damages in the amount of $12,500.00 and punitive damages totaling $70,000.00 against the individual Officials. The trial court denied the City and the Officials' Motion for Judgment Notwithstanding the Verdict, New Trial and/or Remittitur, and granted Ortega's Motion for Attorney's Fees. The Memorandum and Order denying the Motion is published in Ortega v. City of Kansas City, Kansas, 659 F.Supp. 1201 (D.Kan.1987). The City and the Officials appeal the denial of their motion. Challenging the amount of fees awarded, Ortega cross-appeals the trial court's grant of attorney's fees. We REVERSE the trial court's ruling on the Motion for Judgment Notwithstanding the Verdict, New Trial and/or Remittitur, and hold that luring a suspect into the state of Kansas for service of a facially valid warrant does not constitute a claim under 42 U.S.C. Sec. 1983.
 
 Facts
 
 2
 In the fall of 1984, the City and its Officials initiated a sting operation entitled "Operation Express" to facilitate the arrest of a large number of suspects on outstanding warrants. A computer operator for the Kansas City, Kansas, Police Department entered the suspects' names into the computer and obtained an address for each suspect. The police department mailed notices to the suspects telling each of them to claim a package in Kansas City, Kansas. One of the outstanding warrants was for a "Philip Ortega," residing on Indiana Street in Kansas City, Missouri. Although the warrant did not so identify the suspect, he was a thirty-five-year-old black male. When the computer operator entered Ortega's name into the computer, two addresses were displayed: one at the Indiana Street address and another at 90th Terrace, Kansas City, Missouri. The police department sent notices to both addresses.
 
 
 3
 Philip Ortega, a sixty-five-year-old white male, received the notice at his home on 90th Terrace in Kansas City, Missouri, on December 24, 1984. On December 26, he crossed the Missouri-Kansas state line into Kansas City, Kansas, to pick up his package, whereupon he was arrested despite his protests that he was the "wrong" Philip Ortega. He was booked at the Wyandotte County Jail, taken before a District Judge, and released on bond. Several days later, after obtaining counsel, Ortega convinced the judge that he was in fact not the same Philip Ortega sought in the warrant. Although the judge told him the charges would be dismissed, no entry of dismissal was ever entered into the record.
 
 
 4
 Ortega brought a civil action against the City and the Officials under 42 U.S.C. Sec. 1983 for deprivation of liberty without due process and deprivation of extradition rights in connection with his arrest. At the close of Ortega's evidence, the court directed a verdict on all claims except the claim under 42 U.S.C. Sec. 1983 for a violation of his so-called constitutional right to extradition. The trial court instructed the jury that a criminal suspect has a right to extradition under Article IV, Section 2, Clause 2 of the United States Constitution and that his right is implemented by both state and federal extradition statutes, which provide specific procedures for extraditing persons charged with crimes. The trial court further instructed the jury that they could find the City and the Officials liable under 42 U.S.C. Sec. 1983 if they found that the City and the Officials lured Ortega into Kansas and arrested and detained him in violation of the extradition laws. The jury returned a verdict in favor of Ortega and awarded him damages totaling $82,500.00.
 
 Issue
 
 5
 The dispositive issue in this appeal is whether the trial court erred in determining that a suspect charged with a crime on a facially valid warrant has a constitutional right to extradition prior to arrest. We review the trial court's rulings on the Motion for New Trial under the abuse of discretion standard. Harvey v. General Motors Corp., 873 F.2d 1343 (10th Cir.1989). We review the trial court's ruling on the Motion for Judgment Notwithstanding the Verdict de novo. Guilfoyle v. Missouri, Kan., & Tex. R. Co., 812 F.2d 1290, 1292 (10th Cir.1987). We agree with the City and the Officials that a criminal suspect has no pre-arrest extradition rights, the violation of which give rise to a cause of action under 42 U.S.C. Sec. 1983.
 
 Analysis
 
 6
 The original authority for interstate extradition is the United States Constitution, Article IV, Section 2, Clause 2, which provides:
 
 
 7
 A Person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime.
 
 
 8
 (Emphasis added.) Congress implemented this provision through 18 U.S.C. Sec. 3182 (1985), which provides for interstate cooperation in the apprehension and delivery of fugitives on demand from the executive authority of the requesting state, district, or territory from which the person fled. The statute implementing the constitutional provision provides:
 
 
 9
 Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State, District or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, the executive authority of the State, District or Territory to which such person has fled shall cause him to be arrested and secured, and notify the executive authority making such demand, or the agent of such authority appointed to receive the fugitive, and shall cause the fugitive to be delivered to such agent when he shall appear. If no such agent appears within thirty days from the time of the arrest, the prisoner may be discharged.
 
 
 10
 (Emphasis added.) 18 U.S.C. Sec. 3182. By adopting versions of the Uniform Criminal Extradition Act, the states have set forth the requirements of interstate rendition.[1] The Kansas Uniform Criminal Extradition Act is published at Kan.Stat.Ann. Secs. 22-2701 through 22-2730 (1988).
 
 
 11
 The plain meaning of both Article IV, Section 2, Clause 2, and 18 U.S.C. Sec. 3182 convinces us that the constitutional dimension of extradition exists only when demand is made by one jurisdiction for the surrender of a person in another jurisdiction. The classic definition of "extradition" is found in Terlinden v. Ames, 184 U.S. 270, 22 S.Ct. 484, 46 L.Ed. 534 (1902):
 
 
 12
 Extradition may be sufficiently defined to be the surrender by one nation to another of an individual accused or convicted of an offence outside of its own territory, and within the territorial jurisdiction of the other, which, being competent to try and punish him, demands the surrender.
 
 
 13
 Id. at 289, 22 S.Ct. at 491-92. This definition has endured decades of application and analysis. Tavarez v. United States Attorney Gen., 668 F.2d 805, 810 (5th Cir.1982). The notions of demand and surrender are critical to interstate rendition as well. See Innes v. Tobin, 240 U.S. 127, 133, 36 S.Ct. 290, 292, 60 L.Ed. 562 (1916). Prior to executive demand by the requesting jurisdiction, a criminal suspect does not have a constitutional right that supports a claim under 42 U.S.C. Sec. 1983.
 
 
 14
 Although we find no Supreme Court precedent concerning Sec. 1983 claims for the violation of extradition rights, there is ample circuit court authority for the proposition that failure to comply with the provisions of the Uniform Extradition Act as enacted by the detaining state can support recovery on Sec. 1983 claims. Draper v. Coombs, 792 F.2d 915, 919-20 (9th Cir.1986) (forcible return of arrestee from Oregon to Washington without process supported a claim under 42 U.S.C. Sec. 1983 for violation of extradition rights); Ross v. Meagan, 638 F.2d 646, 649-50 (3d Cir.1981) (allegations of violating the Uniform Criminal Extradition Act in failing to comply with post-arrest extradition procedures constituted a claim under 42 U.S.C. Sec. 1983); Crumley v. Snead, 620 F.2d 481, 483 (5th Cir.1980) (delivery of in-custody plaintiff to another jurisdiction while petition for writ of habeas corpus pending could entitle plaintiff to relief under 42 U.S.C. Sec. 1983); Brown v. Nutsch, 619 F.2d 758, 764 (8th Cir.1980) (complaint alleging forcible seizure and interstate transportation of arrestee sufficiently alleged cause of action under 42 U.S.C. Sec. 1983); Wirth v. Surles, 562 F.2d 319, 323 (4th Cir.1977), cert. denied, 435 U.S. 933, 98 S.Ct. 1509, 55 L.Ed.2d 531 (1978) (complaint alleging arrest and transportation of fugitive across state line without extradition proceedings stated a claim under 42 U.S.C. Sec. 1983); Sanders v. Conine, 506 F.2d 530, 532 (10th Cir.1974) (abuse of extradition power by noncompliance with applicable extradition law in transporting arrestee out of state without court proceedings stated a claim under 42 U.S.C. Sec. 1983). In each of these cases plaintiff was restrained or deprived of his liberty outside the jurisdiction of the state issuing the warrant and then transported against his will.
 
 
 15
 The question presented by this appeal, however, is not so simple. At the time of his arrest, Ortega was within the boundaries of Kansas, the jurisdiction which had issued the warrant for his arrest.[2] The City and the Officials argue that because Ortega was not arrested in his asylum state of Missouri, he had no right to be delivered to Kansas under the procedures set forth in the Uniform Criminal Extradition Act. We agree. Because Ortega was arrested in Kansas, Kansas authorities did not make a demand on Missouri to surrender their resident. Consequently, he had no right to extradition proceedings.
 
 
 16
 Further, the Uniform Criminal Extradition Act does not establish an exclusive procedure by which law enforcement officials may arrest non-residents. In its Memorandum and Order published in Ortega v. City of Kansas City, Kansas, 659 F.Supp. 1201, 1210 (D.Kan.1987), the trial court stated that the Kansas Uniform Criminal Extradition Act "clearly provide[s] for the right to extradition prior to arrest." We cannot agree. The Kansas Uniform Criminal Extradition Act sets forth the procedures to be used when Kansas authorities choose to demand surrender of a non-resident whom they have no ability to serve. These state procedures do not create federal constitutional rights where otherwise they do not exist.
 
 
 17
 We are not persuaded that circumvention of the Kansas Uniform Criminal Extradition Act constitutes violation thereof. The trial court equated luring with arrest or restraint of liberty:
 
 
 18
 Regardless of whether a suspect is 'lured' across state lines, or brought over by state authorities after arrest in the asylum state, the same damage results to the individual. In either case, he is deprived of the benefits and procedural protections afforded by the Uniform Criminal Extradition Act.
 
 
 19
 Id. at 1210. We cannot endorse the trial court's equation of trickery with force.
 
 
 20
 The trial court reasoned that our holding in Sanders v. Conine, 506 F.2d 530 (10th Cir.1974), precludes arrest through a sting operation such as "Operation Express." We cannot agree. In Sanders, Wyoming authorities arrested the suspect in Wyoming. Without process, they delivered him to Indiana authorities. Clearly, when Wyoming authorities assisted Indiana authorities in detaining the suspect, he was entitled to the procedural protections of the Wyoming Uniform Extradition Act. In Sanders, we stated:
 
 
 21
 The Wyoming version of the Uniform Extradition Act provides ... that a person arrested without warrant upon reasonable information that he is charged in courts of another state for specified offenses "must be taken before a judge or magistrate with all practicable speed and complaint must be made against him under oath setting forth the ground for arrest."
 
 
 22
 Id. at 532. We premised our opinion in Sanders on the fact that the individual whose rights were violated was detained in an asylum state. In creating for non-residents a constitutional right to be arrested only through extradition procedures, the trial court applied our holding in Sanders far beyond our intent.
 
 
 23
 We find nothing in the Constitution or in applicable federal statutes which would prohibit a state from luring a person into its jurisdiction to effect an arrest. The Constitution requires an asylum state to deliver a fugitive to the receiving state upon demand. The federal enabling act, 18 U.S.C. Sec. 3182, and the various state enactments of the Uniform Extradition Act are designed to implement and facilitate this process. Neither the Constitution nor the Uniform Acts purport to create an exclusive process. In the instant case, Kansas did not: (1) arrest or in any way restrain the liberty of the plaintiff outside its jurisdiction nor did it cause this to be done; and, (2) transport or cause the plaintiff to be transported into its jurisdiction against his will. In this case, authorities in Kansas lured Ortega into Kansas by trickery. No force, threat of force, arrest or restraint of Ortega's liberty occurred outside the jurisdiction of Kansas.
 
 Conclusion
 
 24
 Under the facts of this case, we hold the arrest of a non-resident in the state of Kansas by Kansas authorities does not give rise to a claim under 42 U.S.C. Sec. 1983 for violation of the constitutional right to extradition. In this appeal, the City and the Officials raise additional issues as follows: Whether the trial court erred in determining that the Officials were not entitled to qualified immunity; whether the trial court erred in failing to reduce the award of actual and punitive damages; and whether the trial court erred in failing to strike a certain juror from the jury. On cross-appeal, Ortega raised the following issue: Whether the trial court erred in determining the amount of attorney's fees awarded. Because we reverse the trial court on the dispositive issue before us, we do not address these issues.
 
 
 25
 REVERSED.
 
 
 
 [1]
 For discussions of the development of law in this area, see Abramson, Extradition in America: Of Uniform Acts and Governmental Discretion, 33 Baylor L. Rev. 793 (1981); Comment, Interstate Rendition Violations and Section 1983: Locating the Federal Rights of Fugitives, 50 Fordham L. Rev. 1268 (1982)
 
 
 [2]
 Even though he was the "wrong" Philip Ortega, the warrant was facially valid. The manner in which the City and the Officials carried out their duties, resulting in the most unfortunate arrest of the wrong person, has no bearing on our resolution of the dispositive issue in this appeal. 42 U.S.C. Sec. 1983 does not provide a remedy for every wrong; rather, Sec. 1983 provides a remedy for persons who, under color of law, suffer deprivation of "rights, privileges, or immunities secured by the Constitution and laws." See City of Canton, Ohio v. Harris, --- U.S. ----, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)